CASE 41.—ACTION BY THE OLD WOOLEN MILLS CO. AND
OTHERS AGAINST FRANCES L. PEYTON.—
March 20.

## Peyton v. Old Woolen Mills Co., &c.

Appeal from Ballard Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for plaintiffs, defendant appeal. Reversed.

1. Principal and Agent—Liability of Principal—Evidence—Statements of Agent—The fact of agency, and the actual or apparent scope of the agent's authority to bind his principal, cannot be shown by proving what such agent said or represented as to the extent of his authority.
2. Evidence—Declaration of Agent—A principal is bound by the admission or declaration of his agent only when made during the continuance of the agency, and in regard to a transaction then in hand and being executed.
3. Same—Knowledge of Agent's Acts—On the issue as to whether defendant was a member of a firm indebted to plaintiff, evidence of acts of defendant's general agent in conducting the business, such as listing defendant's property for taxation in her name, and keeping a bank account in her name, under circumstances presumably within her knowledge, was relevant to show her ownership of the property.
4. Same—On the issue as to whether defendant was a member of a firm indebted to plaintiff, evidence of what was said in defendant's absence by her general agent in conducting the business, to creditors, as to her ownership of the property, and his statements in making reports to a mercantile agency to the effect that defendant was a member of the firm, was incompetent.
5. Estoppel—Pleading—Necessity—An estoppel must be pleaded to be available.

J. M. NICHOLS & SON for appellant.

ROBBINS & THOMAS and J. B. WICKLIFFE for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellant, who is a married woman, had been engaged in the mercantile business at Oscar, Ky., prior to 1900. In the latter year the store building and stock of merchandise were destroyed by fire. The house was rebuilt directly, and within a few months a new stock of general merchandise was bought, and a merchandising business conducted at that stand, of the same nature and in the same name as before. Mrs. Peyton's name in her business was generally used simply as "F. L. Peyton." Her husband had previously conducted the business for her. She previously had but little to do with it. After the fire in 1900 and when the new business was begun, the style of the concern was "F. L. Peyton." Her husband's name was Frank Peyton. He claims it was Frank L. Peyton. Perhaps it was. But it seems that ordinarily he omitted the "L." in the signature of his own name. Mrs. Peyton owned a farm, some houses in Oscar, and other property. She was solvent. Her husband was then and is yet insolvent and without credit. An interest in the store was sold to one Webb, and the style of the firm changed to Peyton, Webb & Co. The stock of merchandise owned by this concern was also destroyed by fire. Suits were brought by creditors of the firm, wholesale merchants who had sold it the stock of merchandise, against appellant, Mrs. Frances L. Peyton, to charge her as a partner upon the firm's indebtedness. She denied that she was or ever had been a member of the firm. The new business was conducted by Frank Peyton

just as had been done, so far as his personal manage-
ment went, when Mrs. Peyton owned it.  The sole
issue made by the pleadings was whether appellant
was a member of the firm of Peyton, Webb & Co.

Frank Peyton's conduct in his business is blame-
worthy in the extreme.  He undoubtedly misled, and
intended to mislead, the wholesalers to believe that
it was his wife's business.  The use of the old style
of the concern, the inserting of the same middle initial
in the business name, and dropping it in his personal
transactions, the manner in which he listed the
property for taxation, the representations he made
to creditors about the matter, the concealment of the
fact that his solvent wife, with an established credit,
had withdrawn from the business, and that he, an
insolvent without credit, under the same name and
the same management, was the only person responsi-
ble for the debts contracted in the business, leave
little room for doubt that he intended an imposition
on the creditors of that concern nothing short of
actual fraud.  But, if this fact were even clearer than
it is, it would afford no ground for charging the fault
of it to his wife, unless she, too, participated in it,
by purposely suffering it, or authorizing it, to aid in
the deceit.  We may say in passing that there was
considerable evidence that appellant was in fact the
"F. L. Peyton" who was a member of the firm and
that she herself so recgonized and treated the matter.
It is not our purpose to discuss this phase of the case,
though, further than may be necessary in the treat-
ment of the legal questions which we will dispose of,
as we conceive the decisions of the facts to be a
matter for the jury under the guidance of proper
instructions and competent and relevant evidence.

There was considerable evidence introduced by appellees that Frank Peyton, not in the presence of his wife, represented that she, and not he, was the member of the firm of the name of ''F. L. Peyton.'' It was also shown that in giving in the property to the county assessor for taxation, he listed all the property, her lands and the stock of merchandise, in the name of ''F. L. Peyton,'' that in making reports to the R. G. Dun mercantile agency he showed that it was Mrs. Peyton who was the member of the firm. All of this evidence was introduced as substantive evidence in support of appellee's contention that appellant, Mrs. Peyton, was in fact the F. L. Peyton who conducted and was a member of the firm who conducted that business. This class of evidence was objected to by appellant, and was admitted over her exceptions. It was so extensive in volume, and so damaging in character and probable effect, that there is no doubt of its being reversible error, if error at all.

Appellees' contention is that, as appellant put her husband in the position and held him out as her agent, she is bound by his acts and statements made in that business, as if done and made by her in person. It is undeniably true that where one acts in a matter by an agent, the latter's action in the matter, if within the real or apparent scope of his agency, is as binding on the principal as if done by the principal himself. But it is always necessary to first establish the fact of the agency, and to show the actual or apparent scope of the agent's authority. This cannot be done by proving what the agent said or represented as to the extent of his authority. Morgan's Heirs v. Marshall, 7 J. J. Marsh, 316; Bruen v. Grahn, 5 Ky. Law Rep. 312;

Dieckman v. Weirich, 73 S. W. 1119, 24 Ky. Law Rep.
2340; Cent. Penn. Tel. Co. v. Thompson, 112 Pa. 131,
3 Atl. 439; Francis v. Edwards, 77 N. C. 271; Gal-
breath 'v Cole, 61 Ala. 139; Mussey v. Beecher, 3
Cush. (Mass.) 517.   It must be rare that what one
claiming to be the agent of another, said out of court
of the nature and extent of his agency, can be admitted
as evidence of such agency against the principal.   The
whole doctrine of an agent's admission against the
principal's interest binding the latter rests upon the
idea that it is of the res gestae, the representation or
statement of the agent, in such cases, being the
ultimate fact to be proved, and not the admission
of some other fact.   A party's own admissions
against his interest may be given in evidence against
him whenever made.   But the admission or declara-
tion of his agent binds him only when made during
the continuance of the agency and in regard to a
transaction then in hand and being executed.   Green-
leaf on Evidence, section 113.   When the principal
fact to be established is the liability (but not its
extent) of one as principal in a transaction, what
another, though his agent, may have said by way of
admission concerning such principal's liability is
hearsay; is not part of the res gestae, and could not
well be within the scope of an agent's authority to
make.   1 Phil. on Evidence (Am. Ed.) 402.   The
agent, of course, may as a witness testify to the fact
and scope of his agency, unless otherwise incompetent
as a witness.   So, his agency may be shown by circum-
stances, or by proof of the conduct of the principal's
acquiescence, approval and the like of the agent's
acts.   Such evidence goes to establish that the alleged
principal is principal, as well as to show the scope of

the agency. The question being discussed is not whether an agent's statement in the course of a transaction, and concerning it, is· receivable as evidence against the principal, but whether such a statement is receivable at all to prove the fact of the agency, which is to connect the principal with the matter. It is stated in Evans on Principal and Agent, page 187: "As a general proposition, what one man says, not upon oath, cannot be evidence against another man. The exception must arise out of some peculiarity of situation, coupled with the declarations made by one. An agent may undoubtedly, within the scope of his authority, bind his principal by his agreement, and in many cases by his acts. What the agent has said may be what constitutes the agreement of the principal; or the representations or statements made may be the foundation of the inducement to the agreement. Therefore, if writing is not necessary by law, evidence must be admitted to prove that the agent made a certain statement. So, with regard to acts done, the words with which these acts are accompanied frequently tend to determine their quality. Nevertheless, the admission of the agent cannot be assimilated to the admission of the principal. A party is bound by his own admission, and is not permitted to contradict it; but it is impossible to say a man is precluded from questioning or contradicting anything any person has asserted as to him, as to his conduct, or his agreement, merely because that person has been an agent of his. An agent can act only within the scope of his authority; hence, declarations or admissions made by him as to a particular fact are not admissible as evidence against the principal, unless they fall within the nature of the agent's

employment as agent; unless, for instance, they form part of the contract which he has entered into and is employed to negotiate on behalf of the principal Hence, what is said by an agent respecting a contract or other matter in the course of his employment is good evidence to affect the principal, but not if it is said on another occasion.''

In the case at bar the objectionable evidence was not admissions made by Frank Peyton as the agent* of his wife, in the course of his agency, concerning the particular transactions in suit; i. e., the purchase of any of the bills of goods sued for. That Frank Peyton purchased the goods is not denied. Nor is there an issue as to the terms of the contracts. If there were, and if Frank Peyton's agency were estab- lished, directly or circumstantially, what he said in the course of the transactions respecting their terms would be receivable as evidence against his principal. But no such inquiry is involved here. On the con- trary, it is, simply, for whom was Frank Peyton acting in making the purchases? What he said in the absence of appellant, and of which she was ignorant, cannot be evidence against her under any rule of evidence that he was acting for her. Although it may be assumed as otherwise proved that Frank Peyton was the general agent of his wife in con- ducting that mercantile business, yet what he said in her absence respecting the fact that she was principal and he her agent only, cannot be received as evidence that she was principal. Such statement is not properly a part of any transaction involved in the issue being tried and therefore was not part of the res-gestae. What Frank Peyton did toward manag- ing appellant's property, such as listing it for

taxation in her name, is, when shown to have occurred as in this case, under circumstances presumably within her knowledge—for she must have known that, as she did not attend to that duty, some one did it for her—was relevant to show that the property was hers; not because Frank Peyton said it was, but because by her adoption of his act she also asserted it was hers. That he kept the bank account in her name, a fact shown to have been known to her, was also relevant upon the same principal. But what he said to merchants and reported to the mercantile agency were not relevant as against her, and it was error to have admitted that character of evidence to the jury.

In the course of the court's instruction to the jury they were told that, although appellant was not in fact a member of the firm when the goods being sued for were sold to it, yet if she had previously been a member of it, or conducted the business under the name of F. L. Peyton, but had withdrawn without giving actual notice to creditors and those who have been selling goods to the firm, by which failure they were induced to extend credit to the firm, she was nevertheless liable. Such liability is imposed not because the defendant in fact bought the goods, or authorized it, but upon the ground of estoppel; that having misled another by her conduct into a belief to his hurt, she will not be allowed to deny what she had thus induced him to believe was so. The principle is sound. But no such claim was made in the pleadings in this case. Before an estoppel is available it must be pleaded. Faris v. Dunn, 7 Bush, 276; Stacy v. Holiday, 5 S. W. 481, 9 Ky. Law Rep. 517; Ray v. Longshaw, 4 Ky. Law Rep. 904; Excelsior Coal

Mining Co. v. Virginia, etc., Co., 66 S. W. 373, 23 Ky. Law Rep. 1834; 8 Ency. Pl. & Pr. 7; Herman on Estoppel & Res Judicata, 1447.

This must be so, because the doctrine is not that the fact is so and so, but the defendant is liable, notwithstanding it is not so, because he has misled the plaintiff to believe it was. It is one instance where the law allows a recovery in spite of the truth. But if a recovery is sought on such ground, it is but just that the other party should be apprised that the claim is asserted on that ground, and not on one absolutely inconsistent with it, and requiring a distinctly different character of proof to repel the recovery.

The objection to the depositions does not appear from the record to have been erroneously overruled.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial under proceedings not inconsistent herewith.