## Short v. Metz Company.

(Decided June 9, 1915.)

### Appeal from Fayette Circuit Court.

1. Principal and Agent.—An agency can not be proven by the declarations of the one assuming to be agent, so as to bind the one for whom he is pretending to be agent.

2. Principal and Agent—Authority of Agent to Bind Principal.—An agent, in order to bind his principal by his contract, must have authority from the principal to make such contract, or if no express authority, it must be a contract, which is within the scope of his authority to make.

3. Principal and Agent—Who May Be Held as Principal.—A person may be held as a principal upon a contract, who has by some word or act, either before or at the time of the making of the contract, estopped himself from denying the authority of the one making the contract to act for him.

4. Principal and Agent—Contracts—Ratification.—One may make a contract, without authority, for and on behalf of another, and then if such other ratifies the contract, he will be bound upon it.

5. Principal and Agent—Denial of Agency—Estoppel.—One is not estopped to deny the agency of another for him, unless before or at the time of the making of the contract, he did or said something, which induced some other person to believe that the pre-

tended agent had authority, and acting upon such belief, such other person was induced to act to his prejudice.

6. Principal and Agent—Ratification.—Ratification is the adoption and confirmation of a contract or act, which was done for the one adopting and confirming the contract or act, but without authority to do so, at the time the contract was made or act done.

7. Principal and Agent—Ratification.—A ratification may be expressly done by a principal, or it may be implied from the acts of the principal.

8. Principal and Agent—Ratification.—Before the principal can be held as having ratified an unauthorized act, it is necessary that the principal, at the time of the ratification, should have full knowledge of the material facts of the transaction, and intend to ratify it.

9. Principal and Agent—Ratification.—As a general rule, if a principal, with full knowledge of the material facts, takes and retains the benefits of an unauthorized act, he thereby ratifies the act, but this rule has no application, where the principal receives no benefits from the act, nor where he is legally entitled to what he received without assenting to the act.

10. Principal and Agent—Ratification—What Does Not Amount to.— If an agent owes his principal money, and procures the money through an unauthorized act, which he enters into in the name of his principal, and the principal in good faith receives the money and applies it to the debt, which the agent owes him, his retention of the money, after learning the source from which it was derived, is not a ratification of the unauthorized act through which the agent obtained the money.

SAMUEL M. WILSON and CLINTON M. HARBISON for appellant.

GEORGE W. VAUGHAN for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, T. B. Short, brought this suit in the Fayette circuit court, against the appellee, Metz Company, to recover an automobile, or its value, $475.00, and damages for its detention. The facts in the case appear to be as follows: About September 1st, 1913, one Humphreys represented to appellant, that he was an agent of the Metz Company, which was a corporation organized under the laws of Massachusetts, and engaged at Waltham, Mass., in the manufacturing and sale of automobiles, which were known as the Metz. The appellant, at the time, was the owner of a Reo 5-passenger automobile. Humphrey and appellant, after some dickering, with each other, made a contract, by which it was agreed

that appellant would swap his Reo car to Humphreys, for one of the Metz cars—appellant to give Humphreys $175.00, as boot, between the cars. On the 27th day of September, 1913, Humphreys prepared and appellant signed an order for the Metz car. The order requested that appellant's order be entered for the Metz car, to be shipped at once by nearest route, and stating that he agreed to deliver "to you or your agents one Reo 5-passenger car * * * at a value of $300.00, as first payment, and balance of $175.00 to be paid sight draft against bill of lading." This order form, as it appeared on the trial, was an order addressed to Humphreys, but appellant insisted that at the time he executed it, that it was not addressed to Humphreys, but was an order to "Metz Company, Waltham, Mass.," and that, since that time, the name of the Metz Company had been stricken out, and the name of Humphreys substituted, without his knowledge or consent. In all the transactions between Humphreys and appellant, both that stated above and those which will hereafter be stated, appellant insists that Humphreys represented to him that he was the agent of the Metz Company and was acting as such, while Humphreys insists that he was not acting as agent for the company, but upon his own individual account, and did not represent that he was agent for the company or acting as such. The Metz Company insists that Humphreys was never its agent at any time, and never had any authority to enter into any contract for it. On the 15th day of October, appellant inquired of Humphreys if the car had arrived from the Metz Company, and Humphreys represented that it had not, and the reason it had not arrived, that the Metz Company refused to ship it until a deposit had been made with it of $150.00 of the price. The appellant then agreed to and did pay to Humphreys the $175.00, which he was to give, as boot, between the cars. A receipt was then made out to appellant, which Humphreys signed as the agent of the Metz Company. The receipt recited, that Humphreys, as agent of the company, had received from appellant $475.00 in full payment for the Metz car, the payment being made by the delivery of the Reo 5-passenger car, at the price of $300.00, and $175.00 paid in cash. Appellant and Humphreys, both, executed another writing, simultaneously with the receipt, which was in the nature of a contract between them, and stated that

in consideration of the payment of $175.00, and one Reo
5-passenger car, at $300.00, on that day, in full payment
for one Metz car, Humphreys agreed to deliver to ap-
pellant the Metz car, and that the Reo car, then in pos-
session of Humphreys, should be held by appellant until
the arrival in Lexington "of his Metz automobile." The
writing further provided, that Humphreys should have
the right to sell the Reo car, and if he sold it before the
date of the arrival of the Metz car, the proceeds of the
sale should be applied to the account of appellant. On
the 20th day of October, Humphreys sent to the Metz
Company $150.00. On the 23rd of October, appellant sent
a telegram to the Metz Company, as follows: "Wire
time of arrival of car ordered through agent Humph-
reys." On October 24th, Metz Company sent telegram
to appellant, as follows: "Car shipped on Humphreys'
order October twentieth. Do not knew when it will reach
destination." On October 25th, the Metz Company wrote
appellant a letter acknowledging receipt of his telegram,
and, also, stating the contents of telegram of October
24th, from it to appellant. It should be stated that
Humphreys never sent to the company the order for the
car which was signed by appellant, but ordered a car
from appellee to be shipped to himself, at the price of
$380.00, and the $150 he paid on it before it was shipped,
he did in his own name, and never mentioned appellant
in connection with the transaction. Some time, before
the 20th of October, Humphreys had ordered the car
from the company, but it had refused to ship it upon his
order, until he had deposited the $150.00, and when he
did so, on the 20th, the company shipped the car to Lex-
ington, Ky. It was consigned to the Walthem National
Bank, with a sight draft for $232.50, to cover the balance
Humphreys was to pay for the car, attached to the bill
of lading, and with directions to notify Humphreys.
Humphreys had taken the Reo 5-passenger car, which
appellant had delivered to him, and broke it, and then
sold it for a small sum. He was not able, or failed to
take up the draft, and hence could not get possession of
the Metz car. Humphreys had been, since in August,
previous, trying to perfect an arrangement with the Metz
Company to handle its cars, but one of the conditions
precedent to making such arrangement with him, the
company required him to buy one of its cars, to be used
as a demonstrator, and to pay it for the car. On the

7th day of November, 1913, the company and Humphreys made a contract, by the terms of which, it gave to him the exclusive right to handle its cars in Fayette County, and agreed to refer all persons desiring to buy its cars, in that county, or asking information in regard to the cars, to Humphreys, and fixing a price at which it would sell and deliver the cars bought by Humphreys from it, to him. The writing denominated Humphreys a "dealer," and not an "agent," and did not provide for any service that Humphreys should perform for the company, in any way, and expressly provided, that he did not have authority to make any contract for it, or to bind it by any contract made by him. It stated the number of cars each month Humphreys agreed to buy from the company, and the price, and provided that either party might cancel the contract upon ten days' notice.

On December 9th, 1913, appellant having waited, in vain, for Humphreys to deliver him the Metz car, which Humphreys had promised to him, wrote to the company, to the effect, that he desired the company "to have your agent here in the person of Jas. A. Humphreys, to release the Metz 22, which I ordered in September last;" that there was a draft in bank for $232.50 against the car, and the local agent was unable to release same; that he had paid him $175.00 in cash, and a Reo car at $300.00; that he had waited long enough and the company should see that he should get the car that he had paid for.

On December 13th, the appellee, company, wrote appellant to the effect, that it was surprised that the draft on the car recently shipped had not been taken up; that they were taking the matter up with Humphreys that day, and trusted that in that way "we will be able to straighten matters, to the satisfaction of all concerned." On the same day appellee wrote to Humphreys, saying to him, that it had been advised by appellant, that there was a draft in the bank, at his end of the line, for a car he ordered from it in September, last, and that he must take up the draft, in order that the transportation company should not be holding it for the freights.

Humphreys immediately replied, saying to the company, that he had made a satisfactory arrangement about the car, and that the whole matter would be "taken care of at once."

On December 22nd, appellant wrote appellee, that Humphreys said an arrangement had been made with appellee to pay half of draft, and appellee to wait for balance; that he would not do anything more; that unless appellee stood back of its agent, and delivered the car, that he would take legal action.

On the same day appellee wrote appellant and asked him why he did not go to the bank and pay the draft, and take delivery of the car himself.

On the same date appellant wrote appellee, that he was tired of the delay, and if matters were not brought to a close, he would have to refuse to receive the car.

On December 23rd, appellee telegraphed appellant, that it did not understand existing conditions; to write it fully; that it could not help him until it knew the details and facts. On the same day, appellee wrote appellant, that its telegram should indicate to him that it was not familiar with the facts of his trouble, and before taking final action in the matter, that it desired fully to know all the existing conditions. On December 27th appellant wrote appellee a letter, in which he recited the facts connected with his transaction with Humphreys, and in the letter referred to Humphreys, at all times, as the agent of appellee.

Appellant had filed the suit on the same day of his last letter to appellee, and this seems to have ended their communications with each other. The appellee entered its appearance and filed an answer, to which appellant replied, and the issues were thus made up. The appellant claims that Humphreys was the agent of appellee, and that it was bound by his contract; if he was not authorized to make the contract for appellee, that it, thereafter, ratified it. The appellee claims that Humphreys was not its agent; that it knew nothing of his dealings with appellant, and was not bound by the contract of Humphreys and never ratified it. The proof showed that the contract made by appellee and Humphreys, on November 7th, 1913, continued until in the following March, when appellee gave notice and cancelled it. Proof was introduced by appellant showing that after the time of the transactions between appellant and Humphreys, several persons communicated with appellee, seeking to secure a contract to represent appellee as its agent, all of which appellee declined, writing them that the territory was under contract to Humphreys, and probably in one

or more of the letters referring to him as its agent. Proof was introduced by appellee showing that, where persons having such contracts with the manufacturer of automobiles, as Humphreys had with appellee, were sometimes, in the talk of the trade, called the agents of such company. To this evidence appellant objected, and his objections being overruled, he saved an exception.

The court instructed the jury, in substance, that if at the time of the making of the contract for the purchase of the car from Humphreys, that Humphreys was the authorized agent of appellee for the sale of its cars, and had authority as such agent to make such contract; or if at the making of such contract Humphreys was not the agent of appellee, yet, if appellee subsequently ratified the contract, as having been made for and on its behalf, the jury should find for appellant. The converse of this instruction was given, and, also one defining the measure of damages in the event the jury should find for appellant.

The appellant offered three instructions in writing, which the court refused to give, and he excepted to the ruling of the court, but the transcript fails to show that the appellant objected to the instructions which were given, or excepted to the ruling of the court in overruling his objections. He moved the court to define the word "ratified" as used in the instructions, which was overruled, and he excepted thereto. The jury returned a verdict for appellee, and judgment was rendered accordingly. The appellant, now, seeks a reversal of the judgment against him for the following reasons:

First: The verdict was contrary to the weight of the evidence; the evidence established ratification of the bargain and sale to appellant.

Second: The court erred in refusing to give instruction Number 2, offered by appellant.

Third: The court erred in not defining the word "ratified."

Fourth: The court erred in admitting testimony of motor car dealers, as to the use of the word "agent," in connection with the business of the sale of automobiles.

With reference to the first ground relied upon for reversal there was no evidence which tended to show in any way, that on October 15th, when the contract relied upon is alleged to have been entered into, that Humphreys was the agent of appellee. The evidence, in fact, dis-

tinctly showed that he was not such agent, and had no authority to make a contract for appellee, or to bind it in any way. The appellant says that Humphreys told him, that he was the agent of appellee, and when he signed the receipt of that date, he added to his name the words "Agent Metz Company." It is a well-established rule, that one cannot make a contract or bind another as an agent for such other, by pretending that he is an agent, or stating that he is such. To bind one upon a contract made by another, such other must have authority to make such contract from the one sought to be bound, and the contract must be one within the scope of the authority given; or else the one sought to be bound upon a contract made by another, must have by some word or act, either before, or at the time of the making of the contract, estopped himself from denying the authority to act for him, of the one making the contract; or, else the contract must have been made by one acting on behalf of the one sought to be bound, although not authorized to do so, and thereafter the one sought to be bound must have ratified the unauthorized contract made for him. As above stated, the evidence not only fails to show, that at the time of the making of the contract between Humphreys and appellant, that Humphreys had any authority to make a contract for appellee, but conclusively shows his want of such authority. The evidence conduces to the same conclusions, when applied to the rule, that the appellee did or said anything, either before or at the time of the making of the contract, or at the time when appellant parted with his money and automobile to Humphreys, which did or could have induced appellant to make the contract, or to part with his money or automobile. Before appellee could be estopped to deny the agency of Humphreys, it must be shown that appellee did or said something, which induced appellant to believe that Humphreys was its agent, and had authority to act for it, and acting upon such belief, he was induced to act to his prejudice. 31 Cyc., 1247. It can be further said, that no word or act of appellee, at any time, so far as the evidence discloses, induced the appellant to act to his prejudice. The letters written by appellee to several persons in Fayette County, who sought an agency for appellee, in which it referred the correspondents to Humphreys, and in one or more of which it spoke of him as being its agent, could not have in-

duced appellant to believe that Humphreys was its agent and authorized to act for it, at the time he made the contract with, and paid Humphreys the money and delivered the Reo car to him, because these letters were not written or received until from ten days to two or three months after the contract between appellant and Humphreys had been made. Appellant did not, of course, pretend to act upon the information contained in these letters. The reference in one or more of these letters to Humphreys as its agent, not having induced appellant to his prejudice to do anything prejudicial to himself, did not estop appellee to deny that Humphreys was ever its agent, and to show the facts of the actual relations between it and Humphreys, and if Humphreys was not its agent, it was not bound by his acts. It had not placed Humphreys in a situation to enable him to cause loss to appellant.

. The remaining question is: Does the evidence so clearly show that appellee ratified the contract between Humphreys and appellant, that the finding of the jury to the contrary was a finding against the weight of the evidence or a finding contrary to law? Ratification of a contract, as having reference to principal and agent, is the adoption and confirmation by the principal of a contract made by one, who at the time, assumed to act as his agent in making the contract, without authority to do so. 31 Cyc., 1245. To make the contract such as could have been ratified by the appellee, Humphreys, although not authorized, must have made the contract on behalf of the appellee. Appellant testified that Humphreys claimed at the time to have been making it on behalf of appellee, while Humphreys denied this, and testified that he was making the contract on his own behalf. The receipt executed at the time is signed by Humphreys, agent of Metz Co., while the other portion of the contract put into writing at the same time and signed by Humphreys and appellant, appears to have been a transaction with Humphreys on his own behalf, and is so signed by him. The car was purchased by Humphreys, to whom, appellee charged the price of it upon its books, under a contract between Humphreys and appellee, that $150.00 was to be paid before the car was shipped, and the remainder of the price to be paid before he could come into possession of it, and the $150.00 was received by appellee from Humphreys upon this contract and cred-

ited to Humphreys, and the car shipped to Humphreys, before appellee ever heard of appellant, or any of his dealings with Humphreys. It may be assumed that the $150.00, which Humphreys paid to appellee, was a part of the money paid to him by appellant, but the remaining $25.00 and the Reo car, the appellee never received nor heard of, until long afterwards. The ratification of an unauthorized act by an agent may be expressly made by a principal or it may be implied from the acts of the principal. In the case, at bar, there is no contention that any evidence conduced to show that appellee ever expressly ratified the contract which Humphreys made with appellant. Is there any evidence of facts, which show by implication, that it ever ratified the contract? The only fact which can be relied upon to show ratification by appellee, conceding for appellant the contested fact, that Humphreys made the contract on behalf of appellee and not himself, is the correspondence between appellant and appellee, and the fact that appellee kept the $150.00, which Humphreys paid it for the car. There is a general rule, that before the ratification of an unauthorized act or transaction of an agent is binding upon the principal, it is necessary, that the principal should have full knowledge, at the time of the ratification, of all the material facts of the transaction. Fletcher v. Dysart, 9 B. M., 413; Gaskill v. Huffaker, 49 S. W., 770; 31 Cyc., 1253; McDoel v. Ohio Valley Imp. Co., 36 S. W., 175; Owensboro Bank v. Western Bank, 15 Bush, 526. The above rule holds good in every case, except when the principal intentionally assumes the responsibility without inquiry, or deliberately ratifies, having all the knowledge in respect to the act which he cares to have. 1 Mechem on Agency, Sections 286-395. Before a principal can be held to have ratified the unauthorized act of an agent, or a stranger who assumes to act as such, it must appear, either expressly or by implication, that the principal intended to ratify the act, and if such intention cannot be shown, there is no ratification. The correspondence and telegrams fail to show, that when appellee was sending the telegrams and writing the letters attributed to it, that it had any knowledge that Humphreys had assumed to act as agent for it, in the transaction between him and appellant, or had any knowledge of what that transaction was, until the letter from appellant of December 9th. In that letter, it is not directly informed that Humphreys

assumed to act as agent for it in the transaction. Nor does it appear that appellee fully understood the material facts in the matter, until appellant's letter of December 27th, after his suit was filed. So it cannot be implied from any of the telegrams or letters, that it ratified Humphreys' contract with appellant.

It is insisted that because appellee received the $150.00, paid to it by Humphreys, and retained it, that it thereby ratified the contract between appellant and Humphreys, and is now estopped to deny the agency of Humphreys. It must be borne in mind, however, that Humphreys was not the agent of appellee, and at the time it received this money it had no relations with Humphreys, other than vendor and purchaser of a car, and knew nothing of appellant. Humphreys had contracted with appellee for the purchase of a car, and by the terms of the contract was to pay this sum, in cash, before the shipment of the car. When it was received, it was received as a credit upon the sum, which Humphreys owed it for the car upon his own contract, and was never received or retained as a part of the benefits of the contract between Humphreys and appellant. Appellee had no contract with appellant, and Humphreys was not its agent, and it was not obliged to forego the benefits of its contract with Humphreys, because of a contract between Humphreys and appellant, which appellee had nothing to do with and no knowledge of it, and did not in any way induce. The rule is stated in 31 Cyc., 1267, as follows:

"It follows as a general rule, if a principal with full knowledge of all the material facts takes and retains the benefits of the unauthorized act of an agent, he thereby ratifies such act, and with the benefits accepts the burdens resulting therefrom. The rule, of course, has no application where the principal receives no benefit from the agent's act; nor does it apply if he is legally entitled to what he has received without assenting to the act of the agent, and he does not otherwise give his approval of such act. * * * A principal, also, has a right to receive money from an agent in payment of a debt due from the latter, without inquiry as to the source from which it came; and if it is in good faith so received and applied by the principal, its subsequent retention after he learns that it was procured through an unauthorized transaction entered into by the agent in his name will not amount to a ratification of such transaction."

The same rule is stated in 1 Mechem on Agency, 320. The above is the rule, where an authorized agent exceeds his authority, and it applies with more force to the transaction of one, who is not an agent, but merely assumes to be. The case of White Plains Coal Co. v. Teague, 163 Ky., 110, relied upon by appellant, is not a case in point. In that case the agent was held out to the public by the principal as his agent, and the acceptance of the benefits was only one of the incidents to the transaction.

It is insisted that appellee did not promptly repudiate the act of Humphreys, in making the contract with appellant, when knowledge of the transaction came to it, and for that reason it is bound as having ratified the contract. This rule no doubt prevails, where the act is that of an authorized agent, who exceeds his authority, and the silence of the principal induces one to rely to his prejudice upon the ratification, arising from the silence of the principal. This rule, however, does not apply, where the act relied upon is one performed by one, who is not an agent, and the silence of the one in whose name the act is done, does not induce any one to do anything to his prejudice. Mere silence is only evidence of ratification, but not conclusive.

For the reasons above stated, the court was not in error in refusing to give instruction number 2, requested by appellant. The instructions given seem to fairly present the issues in the case, and we are not able to say that the jury did not determine the issues as they should have been and in accordance with the weight of the evidence.

The court should have sustained the objection of appellant to the evidence of the motor car dealer, who testified, that in the trade in such vehicles, the words agent and dealer were used interchangeably, but its admission could not have prejudiced the substantial rights of the appellant, as it could have had no effect upon the real issues in the case.

The failure of the court to define the word "ratified," as used in the instructions, was not prejudicial. The meaning of the word ratify, as commonly used, is to approve and sanction; to make valid; to conform; to give sanction to; and it has the same meaning, as a matter of law, as applied to the facts of this case, in connection with the other words used in the instruction, and it does

not appear that the jury could have failed to comprehend it aright.

Upon the whole case, there appearing no error to the substantial rights of appellant, the judgment is affirmed.