## Crump v. Sabath et al.
(Decided Dec. 11, 1935.)

S. J. STALLINGS for appellant.

FURLONG & WOODBURY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—

Ruth Crump instituted this action against Albert Sabath and B. S. Mitchell, alleging in substance that in December, 1933, she, through her husband and agent, William Crump, entered into an oral contract with Albert Sabath, through his agent, B. S. Mitchell, who was acting within the scope of his employment, whereby defendant Sabath was to race a horse known as Rigo

belonging to plaintiff and that defendant was to receive 60 and plaintiff 40 per cent. of the horse's winnings; that pursuant to this agreement, the horse was taken by defendants to New Orleans, La., and from there to the Tropical Park race course in Florida, where he was entered in a number of races and his winnings in the aggregate amounted to $550; that in January, 1934, defendants entered the horse in a claiming race for $1,500 and the animal was claimed by one R. F. Smallman for such amount and was delivered to him by defendants. She prayed judgment for $1,500, the sale price of the horse, and for $220 representing 40 per cent. of the winnings due her under the alleged contract, subject to a credit of $1,000 paid January, 1934.

By answer defendant Sabath made a general denial of the allegations of the petition and in a second paragraph alleged in substance that plaintiff made the contract with B. S. Mitchell, but the latter was not acting as his agent; that neither plaintiff nor Mitchell maintained a stable and it was necessary under the rules of the race tracks for a horse to be entered in the name of some stable, therefore, Mitchell obtained consent of the answering defendant to run the horse under the colors and in the name of the latter's stable without any obligation upon his part with reference to distribution of the winnings of the horse.

By amended petition it was alleged that in making the contract Mitchell was acting for and on behalf of Sabath, and, if he was not authorized to make the contract for Sabath, the latter thereafter ratified it by accepting and receiving the benefits therefrom.

At the close of plaintiff's evidence the jury at the direction of the court returned a verdict for the defendant and from a judgment in accordance therewith plaintiff is appealing. The reason for the court's action in sustaining the motion for a peremptory instruction does not appear in the record, but we assume, as indicated by briefs by counsel for respective parties, it was on the ground there was no evidence to establish the alleged agency; in fact, this could have been the only ground, since the evidence clearly made a question for the jury as to whether there was a balance due plaintiff under the contract.

The undisputed evidence shows that under an agreement between plaintiff, through her agent and

Mitchell, the horse was to be taken to New Orleans along with horses of Sabath and was to be run in Sabath's name and colors. There is a conflict and uncertainty concerning the agreement as to the division of the horse's winnings. William Crump testified positively that there was no agreement that Mitchell or appellee would share in the proceeds of the horse in the event he was run and claimed in a claiming race. Mitchell, however, testified that it was his understanding that the agreement also applied to the price paid for the horse in such event, but his evidence indicates that nothing was said concerning this matter; that his understanding grew out of the custom in such cases. He testified that in the transaction he was acting for himself personally and not for Sabath, but on the whole his evidence on this point is indefinite, evasive, and not of a persuasive character. On two or more occasions in testifying concerning the transaction and manner in which the horse was handled, he would use the plurals "us" and "we" and then apparently catch himself and change to "me" and "I." He stated that the winnings as well as the price for the horse went to the account of Sabath. The following appears in the examination of Mitchell as a witness:

"Q. Out of this $1,500 that was held, who got the money?

"Q. Who got it?

"A. Yes.

"A. You could not say anybody got it; it is paid to the stable expenses.

"Q. Who was it paid to? A. Mr. Sabath's racing account.

"Q. Did you get any of it? A. I get it for stable expenses.

"Q. I mean for your own? A. For my pockets, no.

"Q. Did Mr. Sabath get it? A. The stable account got it. There was other money; that stable is not run on one horse; there were a great many other horses besides Rigo running, you see.

"Q. But the $550 earnings, you did not get that?

"Q. Me personally?

"A. Yes.

"A. No.

"Q. Nor the $1,500 claiming price, you did not get that personally in your own pocket? A. No.

"Q. It all went to the Sabath account? A. Yes; it all went to the Sabath account; it went to the racing account but didn't go to Mr. Sabath personally. I mean a check was not sent to Chicago, or anything like that. * * *

"Q. When Mr. Crump called on you for an accounting of his money, you told him he would have to see Mr. Sabath before you would do anything? A. Oh yes, before I would do any settling. * * *

"Q. That money he won and that you sold him for, you got none of that personally, yourself? A. No.

"Q. It all went to Albert Sabath? A. Yes sir, I might have got some in that way of payroll; that came out of the money out of the office, and was used, but I could not say I drew any money myself to use the money; do you understand me?

"A. Yes.

"Q. In other words, the whole transaction, you had nothing to gain and nothing to lose, whichever way it went? A. No; the worst thing that could happen to me was the horse being claimed because if I should win myself a bet or two on the horse, I would probably have done very well. * * *

"Q. When you took this horse, you had no idea of getting any profit yourself individually, the stable was to get the profits? A. The stable was to get the profits unless Mr. Sabath said to me I could have the profits, but it had never got to that. He was just a stakeholder. That would not have come up if the horse had remained in the stable. * * *

"Q. He did get the winnings? A. He is holding them. * * *

"Q. So far as you know, Mr. Sabath is will-

ing to pay him; is that right? A. I would not say that, no; because I don't think he has got anything like what he is claiming coming.''

The evidence shows that Sabath did meet with William Crump to discuss settling the matter, but took exceptions to something said by Crump and left without making a settlement or reaching an agreement.

It is an established rule that where there is an issue on the question the burden of establishing agency is upon the party alleging it. Bickel Coal Co. v. Louisville Tire Co., 228 Ky. 239, 14 S. W. (2d) 775; Inter-Southern Life Ins. Co. v. First National Bank, 178 Ky. 95, 198 S. W. 563. While letters of an agent or statements made by him out of court are not admissible to establish agency (Ohio Valley Tie Co. v. Hayes, 180 Ky. 469, 203 S. W. 193; Wier v. Elizabethtown & P. R. Co., 8 Ky. Op. 705; Peyton v. Old Woolen Mills Co., 122 Ky. 361, 91 S. W. 719, 28 Ky. Law Rep. 1303; Seaboard Oil Co. v. Huntsman, 196 Ky. 758, 245 S. W. 860), the evidence of an alleged or supposed agent is competent and admissible on the question of agency (Wright v. Wheat, 224 Ky. 386, 6 S. W. [2d] 458; Grove Lodge v. Fidelty Phoenix Ins. Co., 191 Ky. 666, 231 S. W. 215; California Ins. Co. v. Settle, 162 Ky. 82, 172 S. W. 119). Any evidence, direct or indirect, having a tendency to establish an agency is competent. It is a question of fact to be determined by a jury from a consideration of all the evidence, facts, circumstances, acts, and conduct of the parties. Louisville Cement Co. v. Clell Coleman & Sons, 222 Ky. 183, 300 S. W. 633; McAlister v. Tucker, 203 Ky. 332, 262 S. W. 284; Seaboard Oil Co. v. Huntsman, supra; Wright v. Wheat, supra; 21 R. C. L. 820. Sabath knew of the arrangements to take the horse along with his stable to be run in his name and under his colors and that the winnings and price of the horse, if claimed, would necessarily be and had been paid to his account. Mitchell testified, as will be noted, that the stable was to get the profits unless Mr. Sabath said he could have them. The law will not permit Mr. Sabath to receive and retain the profits derived from the transaction and at the same time disregard and evade the responsibilities of the measure by which they were acquired. Elk Valley Coal Co. v. Thompson, 150 Ky. 614, 150 S. W. 817; 21 R. C. L. 932. Ratification of the acts of another may be ex-

pressly made or may be implied from the acts and conduct of the alleged principal. Detroit Fidelity & Surety Co. v. Gilliam, 237 Ky 425, 34 S. W. (2d) 971; Short v. Metz Co., 165 Ky. 319, 176 S. W. 1144.

On the whole, evidence having a tendency to show agency or furnish an inference from which such may be reasonably inferred, and evidence that the alleged principal has with the knowledge of the facts received and retained the benefits of the transactions clearly makes a case for the jury (Booth & Co. v. Bethel, 78 S. W. 868, 25 Ky. Law Rep. 1747), and the court therefore erred in directing a verdict for the defendant.

Wherefore the judgment is reversed and the cause is remanded for a new trial and proceedings consistent with this opinion.