## Lacy v. Hodgkin et al.

(Decided Dec. 6, 1938.)

RODNEY HAGGARD and D. L. PENDLETON for appellant.
JOUETT & METCALF for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellant, Jeanetta R. Lacy, brought this action against J. J. Hodgkin and W. F. Hodgkin to recover on a note for $1,275, dated June 1, 1934, subject to a credit of $600 as of September 28, 1935. The defendants pleaded payment, and, in response to a motion to make their answer more definite and specific, filed an amended answer setting up the facts constituting the alleged payment. The affirmative allegations of the answer were, by agreement of parties, controverted of record. Upon the trial of the case, the jury returned a verdict for the defendants, judgment was entered dismissing the plantiff's petition, and she has appealed.

The principal ground urged for a reversal of the

judgment is the alleged error of the trial court in overruling the plaintiff's motion for a directed verdict. The propriety of the court's ruling on the motion for a peremptory instruction rests in turn upon the propriety of its ruling on the competency of the testimony of J. J. Hodgkin, in which he related certain conversations with J. H. Wilcox, alleged agent of appellant. Unless there was some evidence tending to show such agency, the testimony in question was incompetent and there was no issue to be submitted to the jury.

On May 9, 1933, Charles Robinson, brother of appellant, executed a note to the Clark County National Bank for $1,581.35. The appellant's husband, J. H. Lacy, and her mother, Mary Robinson Congleton, signed the note as sureties. On June 24, 1933, Charles Robinson and wife executed a mortgage on a house and lot in Winchester, Ky., to J. H. Lacy and Mary Robinson Congleton to indemnify them against loss on the note to the Clark County National Bank on which they were sureties. This mortgage was a third lien on the property. In the mortgage it was stated that the Home Building & Saving Association had a first lien and Rodney Haggard a second lien on the property. The indebtedness secured by the first and second mortgages amounted at that time to more than $2,000. On September 16, 1933, Charles Robinson and wife conveyed the house and lot encumbered with the three mortgages to appellant. In the deed she agreed to assume the three mortgages and to pay all taxes against the property then in arrears. On June 1, 1934, appellant and her husband, John H. Lacy, conveyed the property to J. J. Hodgkin and W. F. Hodgkin. The consideration named in the deed was $1 and the assumption by the grantees of the three mortgages on the property. The deed contained this clause:

"And the further consideration that second party shall pay off and satisfy in full the balance due Home Building and Saving Association by first parties, which balance is $1,666.30; $541.82, with interest thereon at the rate of six per cent per annum from August 16th, 1933, until paid, due and owing Rodney Haggard by first parties, both of which amounts are covered by mortgages on the hereinafter described property, and the further sum of $1,305.70, due and owing by first parties to Clark County National Bank, and the city, county and

state taxes that will be due and payable in the year 1934, a lien being retained herein to secure the payment of all said sums and interest that may accrue thereon.''

The indebtedness of $1,305.70, owing to the Clark County National Bank, mentioned in the deed, was the balance due on the $1,581.35 note executed to the bank by Charles Robinson on May 9, 1933, and signed by John H. Lacy and Mary Robinson Congleton as sureties. It appears that it had actually been reduced on June 1, 1934, to $1,275, but interest to the amount of $38.25 had accumulated. On the day the deed to appellees was executed, they executed and delivered to appellant a note for $1,275, due six months after date and bearing interest at the rate of 6 per cent. per annum from date until paid. On the note is this notation made at the time it was executed: ''Principal $1,275, interest $38.25, total amount $1,313.25.'' The note was also signed by John H. Lacy and Mary Robinson Congleton as makers. It was indorsed by Jeanetta R. Lacy, and delivered by her to the Clark County National Bank, and the bank in turn delivered to her the original Robinson note.

The appellees, or one of them, occupied the property until September 25, 1935, when it was conveyed by them to W. F. Stamets for a consideration of $3,000. During the time they owned the property, appellees paid a small amount on the mortgage debts. The amount is in dispute, but was either $200 or $300. Prior to the sale to Stamets, the Home Building & Saving Association had brought an action in the Clark circuit court against the Hodgkins to foreclose its mortgage. The other lien holders were made parties to this suit. While the suit was pending, the appellees, with the consent of all parties concerned, sold the property to W. F. Stamets for $3,000. It was agreed that the debts to the Home Building & Saving Association and Mr. Rodney Haggard should be paid in full and the remainder of the purchase money should be paid to Mrs. Jeanetta R. Lacy, who had a third lien on the property to secure the payment of the $1,275 note executed June 1, 1934. It was also agreed that all liens should be released in order to give the purchaser a clear title. After paying off the first and second mortgages, $600 of the purchase money was left and Mr. Stamets executed his check for that amount to Jeanetta R. Lacy with this notation

thereon: "For payment J. J. Hodgkin and W. F. Hodgkin mortgage." Mrs. Lacy indorsed the check, delivered it to the Clark County National Bank, and the bank credited the $1,275 note held by it with the payment of $600 as of September 25, 1935.

It is appellees' claim that J. H. Wilcox, cashier of the Clark County National Bank, was appellant's agent in the transaction concerning the sale of the property to Stamets, the distribution of the proceeds, and the release of the liens, and that he agreed with them that if they sold the property to Stamets for $3,000 and paid to Mrs. Lacy the remainder of the purchase price, after satisfying the first and second liens on the property, the note for $1,275, executed by them on June 1, 1934, and the subject of this action, would be canceled so far as they were concerned, and they would be relieved of further liability on the debts assumed by them in the deed from Mrs. Lacy. Appellant claims that no such agency existed and that she at no time authorized Wilcox to make such an agreement. The burden of proof being on the defendants, J. J. Hodgkin was first introduced as a witness. He admitted that he had never had a conversation with the appellant concerning the sale of the property to Stamets or the payment of the note executed to Mrs. Lacy, but he attempted to relate conversations between him and J. H. Wilcox, who he claimed was acting as Mrs. Lacy's agent. The court sustained the objections to this testimony on the ground that the agency had not been established. The witness was then withdrawn, and the defendants called Mrs. Lacy and her testimony was taken as if on cross-examination. Her testimony reveals that she is not conversant with business practices or business terminology, but she testified in a straight-forward manner and answered all questions promptly and willingly and with as much clarity as she could command. She testified positively that she did not authorize J. H. Wilcox to enter into an agreement with appellees to accept the remainder of the purchase price paid by Stamets, after the payment of the first and second mortgages, in full settlement of the $1,275 note. She stated that Mr. Wilcox, who was representing the bank and the Home Building & Saving Association, approached her and asked whether she would consent to a private sale of the property on which she held a lien, the remainder of the purchase price to be paid to her after the first and sec-

ond mortgages had been satisfied. When asked to state what was said when Mr. Wilcox consulted her about the transaction, she said:

"He told me he felt the property would bring a better price to sell it privately than to put it up, if we would have a sale, he thought it would be better to sell it privately than to sell it publicly. He thought we would realize more on this note that way. I asked him at the time about that. I said that I would not be willing for that unless the Hodgkin boys would still sign the note, would still be on that note—they owed the balance on that, and he said that what was left over from the other debts would be applied to that note, and I could hold the original note and it would be eligible for collection in the next fifteen years."

At the close of her cross-examination she was asked these questions and made these answers:

"Q. Mr. Wilcox is the Cashier of the Clark County National Bank, or some official of the Clark County National Bank? A. Yes.

"Q. And he was attending to this matter for you? A. Yes."

J. J. Hodgkin was recalled, and the trial court, on the theory that Mrs. Lacy's testimony showed that Mr. Wilcox was acting as her agent, permitted the witness, over plaintiff's objections, to relate conversations with Mr. Wilcox in which he claimed Wilcox told him he had seen Mrs. Lacy and that she had agreed to a private sale of the property and to release the Hodgkins from further liability on the $1,275 note after payment to her of the balance of the purchase price after the first and second mortgages had been paid. After the defendants closed, the appellant, testifying in her own behalf on direct examination, again denied that Mr. Wilcox had any authority to release her claim to the balance due on the note. She stated that he was representing the bank and merely consulted her for the purpose of obtaining her consent to a private sale of the property. Mr. Wilcox was also introduced as a witness for the appellant, and he stated positively that he was not appellant's agent and did not represent her in the transaction. He stated that he was representing the bank and the Home Building & Saving Association, and that he merely consulted her for the purpose of ascertaining whether or

not it would be agreeable to her to have the property sold privately instead of publicly. She asked him whether she would lose the balance of the note, and he told her that the Hodgkins were still on the note and that she could make it out of them. He denied making the statements attributed to him by J. J. Hodgkin in regard to releasing the Hodgkins from further liability.

The trial court ruled that J. J. Hodgkin's testimony relative to statements made to him by Mr. Wilcox was competent on the theory that there was evidence tending to show that Wilcox was acting in the matter as appellant's authorized agent. It appears that the court based its ruling on Mrs. Lacy's answer in the affirmative to the final question propounded to her on cross-examination, "And he was attending to this matter for you," referring to Mr. Wilcox. This answer, however, must be read in connection with appellant's other testimony, and when so read it is clear that she was referring only to the sale of the property privately instead of publicly and to the release of the liens. There was no proof of an agency which would authorize Mr. Wilcox to release the makers of the note from liability for the unpaid balance. The proof introduced by appellees to establish the agency in order to render J. J. Hodgkin's testimony competent only showed that Mr. Wilcox was acting for the Clark County National Bank and the Home Building & Saving Association, and at Hodgkin's solicitation consulted Mrs. Lacy and Mr. Haggard, the other lien holders, for the purpose of getting their consent to a private sale of the property. It is conceded that appellees at no time talked with Mrs. Lacy in regard to the matter, and there is no proof of any conduct on the part of Mrs. Lacy amounting to a representation that Mr. Wilcox was authorized to act for her. He had never before acted as her agent in this or any other transaction, and no word or act of appellant at any time, so far as the evidence discloses, induced the appellees to act to their prejudice. In Short v. Metz Company, 165 Ky. 319, 176 S. W. 1144, it was said [page 1147]:

> "It is a well-established rule that one cannot make a contract, or bind another, as an agent for such other, by pretending that he is an agent, or stating that he is such. To bind one upon a contract made by another, such other must have authority to make such contract from the one sought to be bound, and the contract must be one within

the scope of the authority given; or else the one sought to be bound upon a contract made by another must have by some word or act, either before, or at the time of, the making of the contract, estopped himself from denying the authority to act for him, of the one making the contract; or else the contract must have been made by one acting on behalf of the one sought to be bound, although not authorized to do so, and thereafter the one sought to be bound must have ratified the unauthorized contract made for him.''

Agency is a fact to be proved, and the burden of proving it is on the person who alleges it. Kentucky-Pennsylvania Oil & Gas Corp. v. Clark, 247 Ky. 438, 57 S. W. (2d) 65; Crump v. Sabath, 261 Ky. 652, 88 S. W. (2d) 665. It is elementary that agency cannot be proved by the statement of the agent. Sampson v. Cottongim, 249 Ky. 670, 61 S. W. (2d) 309; Wright v. Wheat, 224 Ky. 386, 6 S. W. (2d) 458; 1 Mechem on Agency (2d Ed.) section 285. It is true, as argued by appellees, that agency may be proved by circumstantial evidence and may be implied from the acts and conduct of the parties. Crump v. Sabath, supra. John H. Lacy and Mary Robinson Congleton executed a power of attorney authorizing J. H. Wilcox to release the mortgage of June 24, 1933. The release of the mortgage made by Wilcox recited that the lien had been satisfied in full. W. F. Stamets' check for $600 to appellant contained the notation that it was for payment of J. J. Hodgkin and W. F. Hodgkin mortgage. It is contended by appellees that these transactions tended to show that Wilcox was acting as appellant's agent. With this contention we are unable to agree, since the transactions relied upon as establishing the agency are entirely consistent with appellant's claim that she merely agreed that the property should be sold privately in order to enable the appellees to obtain a larger price for the property and the purchaser to obtain a clear title. The evidence was not sufficient to show that J. H. Wilcox was acting as appellant's agent with authority to release appellees from all liability on the note of June 1, 1934, and it follows that the testimony of J. J. Hodgkin concerning statements made to him by Wilcox was incompetent. With that testimony eliminated, there was no issue to submit to the jury, and the court erred in overruling appellant's motion for a peremptory instruction.

The proof shows that appellees paid $49.54 state and county taxes for 1932 and 1933, and the judgment in favor of appellant, when entered, should be credited with this amount.

Judgment is reversed, for further proceedings consistent herewith.