# J. J. Newberry Company et al. v. Faulconer et al.

(Decided March 7, 1933.)

JESSE MORGAN, C. S. LANDRUM and CLAUDE V. PAL-LISTER for appellants.

NAPIER & EBLEN for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

In separate actions for alleged slander which were heard together in the court below, the plaintiffs Mollie Steele Faulconer, Augusta Hall, Mildred Crummett, and Hazel Perkey each recovered judgment against the J. J. Newberry Company, a corporation, and D. L. Beeler for the sum of $5,000. Defendants have appealed. The appeals, having been heard together, will be disposed of in one opinion.

As shown by pleading and proof, the company owns and operates a store in the city of Hazard as a unit in its extensive system of chain stores. At the time of the acts complained of, and for some months thereafter, D. L. Beeler was in active charge of the Hazard store. On Friday, February 13, 1931, two pair of dollar hose were missing from what is called the checking table. On the following morning before the store opened for business, the eleven sales girls who were regularly employed, including appellees, were called before the manager, and the extra girls who worked on Saturday only were sent to another floor. He first asked which one of them had changed her hose in the girls' restroom and thrown the old pair in the waste basket, and was informed by one of the girls that she had bought a pair out in town and had made the change. In substance, the evidence for appellees is that he then told them that two pair of hose were taken from the checking bench some time Friday and went out of the store that night, and that one of the girls took them; that he thought they were honest girls and trusted them, but learned that they were a bunch of thieves; that, until he found out which one took the hose, they were all guilty in his estimation; that, if they would take hose, they would take money, and that the company could not have a bunch of thieves handling its money; that he was going to give the guilty party until 6 o'clock to put the $2 on his desk and walk out of the store not to return. He sent them back to work, but during the day called each one before him for a personal conference, and asked if they knew who took the hose, and, upon receiving a negative reply, told them, if the $2 was not on his desk by 9 o'clock that night, they would all lose their jobs, and asked each of them to help him find out who was the guilty party. After the store closed that night, he again called all the girls before him and talked to them for about 45 minutes in an effort to secure the information as to who had taken the hose. He repeated in substance all he had said in the morning, and finally said he would have to say goodbye to the best organization he had ever had because one of them was a thief, and, until he found out which one it was, all were guilty.

It appears in evidence that only the manager and his assistant and the eleven regular sales girls had access to the checking table on the day the hose were

taken. It further appears that no officer, agent, or representative of the company having authority over the local manager was present at the time or directed or authorized Beeler to speak the alleged defamatory and slanderous words. The only evidence indicating that the company thereafter ratified or approved its manager's conduct was that it retained him as an employee, and the evidence of Mollie Faulconer and her mother, Mrs. G. R. Godfrey, to the effect that in a conversation with them during the week following the controversy at the store D. L. Beeler stated that he had written a full report to the company of what he had done, and that he heard from it and that it approved his actions.

Counsel for appellant argue a number of grounds on which they rely for reversal, but, in so far as appellant company is concerned, the conclusion we have reached renders it unnecessary to enter into a discussion of these various grounds.

It is charged in the petition that, when the alleged slanderous words were spoken by Beeler, he was acting for and on behalf of his codefendant, and within the scope of his employment in transacting its business; and that the company directed and authorized him to speak the words complained of, and, after they were spoken, approved and ratified his acts in discharging appellees and in speaking the defamatory words concerning them.

Among other grounds urged for reversal it is argued by counsel that the proof wholly fails to sustain these allegations as to the company, and therefore the court erred in not sustaining its motion for a directed verdict in its favor, and to this ground alone we shall confine our discussion in so far as it relates to the company.

Under a well-recognized rule which has long prevailed in this jurisdiction, a master cannot be held liable for slanderous words spoken by his agent unless he directs or authorizes the utterance of the actionable words or approves or ratifies his act in speaking them. And this rule applies without respect to whether the master be an individual, a partnership, or a corporation. Young v. North East Coal Company et al., 194 Ky. 520, 240 S. W. 56; Duquesne Distributing Co. v. Greenbaum, 135 Ky. 182, 121 S. W. 1026, 24 L. R. A.

(N. S.) 9955, 21 Ann Cas. 481; Stewart Dry Goods Company v. Heuchtker, 148 Ky. 228, 146 S. W. 423; Pruitt v. Goldstein Millinery Co., 169 Ky. 655, 184 S. W. 1134.

There is a total absence of proof to indicate that the company through any officer, agent, or representative authorized or directed appellant Beeler to speak the alleged slanderous words; therefore it only remains to be determined whether it ratified them after they were spoken, and, as already indicated, the only basis for a conclusion that it did is evidence of the retention of Beeler as an employee and the evidence as to his statement that the company approved of what he had done.

From the cases hereinbefore cited, we find it to be a rule of general application that the mere retention of an employee does not amount to such ratification of the servant's acts in using slanderous words as will render the master liable. We need only refer to the case of Pruitt v. Goldstein Millinery Co., supra, for a clear statement of the rule and the sound reason underlying it, as deduced from many authorities therein reviewed and analyzed.

Coming to a consideration of evidence as to Beeler's statements that the company approved his acts, it is apparent that, if this evidence was otherwise competent, the alleged statement amounted to little, if anything, more than a mere conclusion upon his part. Aside, however, from any question of its probative value, we find the rule to be that evidence of statements or declarations of an agent is inadmissible to establish the fact of agency or the extent of authority. Rice & Hutchins' Cincinnati Co. v. J. W. Croghan & Co., 169 Ky. 450, 184 S. W. 374; Peyton v. Woolen Mills Co., 122 Ky. 361, 91 S. W. 719, 28 Ky. Law Rep. 1303; L. & N. Ry. Co. v. Byrley, 152 Ky. 35, 153 S. W. 36, Ann. Cas. 1915B, 240; Seaboard Oil Company v. Huntsman, 196 Ky. 758, 245 S. W. 860.

In its very nature the term "ratification" necessarily presupposes something done which is ineffective or invalid for want of sufficient authority. Nickels v. Board of Councilmen, 111 S. W. 706, 33 Ky. L. R. 918; A valid ratification relates back to the beginning and gives to the transaction the same effect as if proper

authority had been originally given. Cook v .Commonwealth, 141 Ky. 439, 132 S. W. 1032. If the extent of an agent's authority may not be established by proof of his declaration, it is self-evident that the same rule would forbid admission of his declarations to establish ratification which would relate back to and supply want of authority in the original transaction. In the light of authorities and the proven circumstances, it is manifest that the court erred in not sustaining the company's motion for a peremptory instruction.

The mere fact that the judgment must be reversed as to the company would not authorize a reversal as to appellant Beeler, since a joint verdict against two or more defendants may be set aside as to one or more and permitted to stand as to others; therefore, if the case is reversed as to him, it must be because of some error appearing in the record prejudicial to his rights.

One of the grounds argued for reversal on behalf of both appellants is that the instructions given are erroneous and some of the criticisms are well grounded. The first instruction assumes that the words complained of were willfully, falsely, and maliciously spoken by Beeler, and it is equally erroneous in other particulars, but, since it is apparent that in the event of another trial the case will be submitted as to Beeler alone and only the usual form of instructions will be necessary, it would serve no good purpose to point out the particular defects in this instruction. This alone would have warranted a reversal of the judgment against the company, and it is manifest that in the circumstances it was even more prejudicial to appellant Beeler. As the judgment against Beeler must be reversed because of error in instructions, and there will likely be a reformation of pleadings in the event of another trial, and the proof may not be the same, all other questions are specifically reserved.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.