## Galloway Motor Co. v. Huffman's Adm'r.
## Galloway Motor Co. v. Huffman's Adm'r.

Nov. 28, 1939.

Laurence B. Finn and Joe T. Orendorf for appellant.

G. D. Milliken, Sr., for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

On Sunday afternoon, December 5, 1937, between the hours of 4:30 and 5 o'clock, an automobile driven by Ruble Smith collided with an automobile in which E. R. Huffman and his wife, Annie E. Huffman, were riding. The accident happened on the Scottsville pike about three miles from the city of Bowling Green. Smith was.

traveling at a high rate of speed, and the impact of the collision was so great that both cars were completely wrecked and all three of the parties were killed. It was admitted that Smith was a salesman for and that the car he was driving belonged to the Galloway Motor Company, a partnership composed of H. F. Galloway and Frank L. Galloway. Edward M. Huffman, son of the deceased Huffmans, qualified as the administrator of the estate of each of his parents, and brought these actions against the Galloway Motor Company. By order of the court they were heard together, and the jury rendered verdicts in favor of the administrator for $5,558.33 in the E. R. Huffman case and $3,708.33 in the Annie E. Huffman case. From the judgments entered upon these verdicts, the Galloway Motor Company appeals.

It was the contention of the plaintiff that at the time of the accident Smith, the agent of the motor company, was acting within the scope of his employment, and the issue was made on this point. The first ground urged for a reversal is that the appellant, defendant below, was entitled to a directed verdict at the conclusion of the plaintiff's evidence and at the conclusion of all the evidence. Appellant contends that the appellee, plaintiff below, failed to make out a prima facie case by failing to prove that at the time of the accident Ruble Smith, though driving appellant's car, was acting within the scope of his employment. Appellee contends that, having proved that Smith was employed by the defendant as a used car salesman and that he was driving a used car owned and offered for sale by the defendant at the time of the accident and having proved that the duties of Smith required him to demonstrate defendant's car, the burden of going forward with the evidence fell upon the defendant to show that Smith, at the time of the accident, was not acting in the course of his employment or in his master's business, and that the defendant's testimony failed to meet the burden and did not answer the prima facie case made by plaintiff's proof. For a determination of this issue, we must look to the evidence as presented to the lower court.

Crit Smith and James Thomas, witnesses for plaintiff, testified that Ruble Smith had told them that he was to take a car out to Ben Rogers' home on the Scottsville pike Sunday afternoon sometime after 4 o'clock.

William Harrod testified that he told Smith several weeks before the accident that Ben Rogers was in the market for a used car. Ben Rogers testified that he had talked to Smith several times about buying a car; that the last time was on Saturday afternoon before the accident, and that at that time he had made an engagement with Smith to bring him a car the following Sunday sometime after 4 o'clock; that he lived on the Scottsville pike; and that it was the only road leading from Bowling Green to his home. This testimony was objected to, and appellant insists that it was incompetent and was improperly admitted. The question of the competency of the testimony of these witnesses will be discussed later. Charles Gray, Dick Jenkins, and John Sadler, salesmen for the Galloway Motor Company, testified that if a car was on the used car lot with sufficient gasoline in it any salesman could drive it off for the purpose of demonstration, and that express permission from the defendant was only necessary when a car needed gasoline before being taken away, and that the permission of the defendant was required to enable a salesman to get gasoline and not to enable him to take a car from the lot. At the close of plaintiff's evidence, the defendant moved the court for a peremptory instruction, and the court overruled the motion. The testimony introduced by the defendant contradicted for the most part that introduced by the plaintiff except this testimony of the following witnesses:

Eldon Moulder, a salesman, on cross-examination, was asked the following questions and made the following answers:

"Q. Now suppose you didn't need gasoline, there was enough in the car, then did you have to get permission from these fellows (defendants) to take it out? A. No, sir.

"Q. That was permissible by them when you had sufficient gasoline in there, that you could take it out without asking them? A. Well, we would take them out when they had gasoline in them.

"Q. The manager down there would have to know it? A. Certainly."

Dillard Williams, another salesman, stated that one of the reasons for the rule that a salesman was re-

quired to tell the defendant where he was going was "in case you have a customer coming in calling for you the company will know where to locate you and he can come back at a certain time to meet you." He testified that when a car had sufficient gasoline he generally told defendant where he was going when he took it out.

On a motion for a peremptory instruction, every fact the evidence conduces to establish and every inference the jury may reasonably draw from the facts and circumstances in the evidence before them must be assumed to be established. Where there is any evidence of substance to sustain an issue, the question is for the jury. Having proven that Smith was the agent of defendant for the purpose of demonstrating used cars and that at the time of the accident he was driving one of his employer's used cars, coupled with the evidence that defendant's salesmen were accustomed to take cars off the lot with no express permission except for the purpose of obtaining gasoline, it is the opinion of the court that the plaintiff made out a prima facie case that at the time of the accident defendant's agent was acting within the scope of his employment, and that having done so the burden of going forward with the evidence shifted to the defendant. The court therefore correctly overruled the defendant's motion for a peremptory instruction made at the conclusion of plaintiff's evidence. The evidence brought the case within the rule announced in Home Laundry Company v. Cook, 277 Ky. 8, 125 S. W. (2d) 763; Ashland Coca Cola Bottling Company v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52, and Wood v. Indianapolis Abattoir Company, 178 Ky. 188, 198 S. W. 732. Other cases of this court of interest in this connection, though not directly in point, are: Keys v. Nash's Adm'x, 264 Ky. 398, 94 S. W. (2d) 1006; Consolidated Coach Corporation v. Bryant, 260 Ky. 452, 86 S. W. (2d) 88; Corbin Fruit Company v. Decker, 252 Ky. 766, 68 S. W. (2d) 434; Bowen v. Gradison Construction Company, 224 Ky. 427, 6 S. W. (2d) 481. See, also, annotation in 96 A. L. R. 634.

Appellant cites and relies upon Corbin Fruit Company v. Decker, 252 Ky. 766, 68 S. W. (2d) 434, in support of its contention that something more than mere ownership of the motor vehicle is required to establish agency, or the relation of master and servant, between

the owner and the person operating it. The Decker case, however, recognizes the rule that proof that the motor vehicle belongs to the defendant and that it was being operated at the time of the accident by a general employee of the defendant creates a presumption that, at the time, the driver was acting within the scope of his employment. In the Decker case there was neither proof that the motor vehicle was owned by the defendant nor that its driver was defendant's employee or agent. In a majority of jurisdictions proof of ownership of an automobile causing injury or damage is prima facie evidence that the owner is responsible for the negligence of the person operating it at the time of the accident, but in this jurisdiction there must also be proof that the automobile was being driven at the time of the accident by an employee authorized to use it in performing his duties as such employee. Cases, supra. The presumption raised by such proof may be overcome by evidence to the contrary, and where such evidence is contradictory the question whether such presumption is overcome is for the jury, but where it is undisputed it becomes a question for the court and the jury should be instructed to find for the defendant. Home Laundry Company v. Cook, supra, Ashland Coca Cola Bottling Company v. Ellison, supra. If the testimony of the witnesses William Harrod, Crit Smith, James Thomas, and Ben Rogers relative to statements made to them by Ruble Smith is eliminated, the only proof for plaintiff is that the automobile causing the injuries complained of was a used car owned by defendant and was being driven at the time of the accident by Ruble Smith, an employee of defendant, and that Smith's duties were to demonstrate and sell defendant's used cars. This proof raised the bare presumption that Smith was acting within the scope of his employment at the time of the accident.

William Harrod testified that he told Ruble Smith on October 9, 1937, and again two or three weeks later, that Ben Rogers was in the market for a used car. Crit Smith, father of Ruble Smith, lived on the Porter pike about four miles from Bowling Green. He testified that his son came to his home between 8 and 9 o'clock on Sunday morning to obtain money with which to pay a fine that had been assessed against him in the Bowling

Green police court. He gave him a $10 bill. Ruble Smith was accompanied by James Thomas, his cousin, and they were riding in the latter's automobile. The witness further testified that his son told him on that occasion that he had an engagement to demonstrate a car to Ben Rogers on that afternoon. James Thomas testified that he drove Ruble Smith to Crit Smith's home about 8:30 o'clock on Sunday morning; that they returned to Bowling Green about 9 o'clock, went to the police station, then drove around town until 11 o'clock when Smith got out at the used car lot of the Galloway Motor Company. Smith told him that he was going to demonstrate a car to a prospect during the afternoon. The substance of Ben Rogers' testimony has been set out above. The appellant objected to the testimony of these witnesses detailing alleged conversations with Ruble Smith which took place in the absence of the management and not at a time so closely related to the accident that it could be considered as establishing any purpose, intent, or motive of Ruble Smith at the time the accident happened.

It is a rule, universally recognized, that the declarations of an agent are inadmissible to prove the fact of agency or that he was acting within the scope of his authority in a particular transaction. Lacy v. Hodgkin, 275 Ky. 722, 122 S. W. (2d) 768; Crump v. Sabath, 261 Ky. 652, 657, 88 S. W. (2d) 665; Sampson v. Cottongim, 249 Ky. 670, 61 S. W. (2d) 309; J. J. Newberry Company v. Faulconer, 248 Ky. 59, 58 S. W. (2d) 217. In Wright v. Wheat, 224 Ky. 386, 6 S. W. (2d) 458, 459, it was said:

"An attempt was made in this case to prove an agency by the mere declarations of the supposed agent. This was contrary to the authorities and is not allowable. Wilson v. Dunn, 213 Ky. 843, 281 S. W. 991; Short v. Metz Co., 165 Ky. 319, 176 S. W. 1144; Muir v. Glossbrenner, 211 Ky. 1, 276 S. W. 1058; 2 Corpus Juris, Section 692, p. 935.

"Agency may be proved by the testimony of the agent (2 C. J., Section 689, p. 933; Grove Lodge v. Fidelity Phœnix Ins. Co., 191 Ky. 666, 231 S. W. 215) or by circumstantial evidence, as any other fact (Seaboard Oil Co. v. Huntsman, 196 Ky. 758, 245 S. W. 860; McAlister v. Tucker, 203 Ky. 332,

262 S. W. 284), but it may not be proven by the declarations of the agent, which is nothing more than hearsay as against the principal.''

The ground of exclusion is that such statements are hearsay. The testimony of appellee's witnesses concerning statements made by Ruble Smith tending to show that he was acting within the scope of his employment at the time of the accident does not fall within the rule, sometimes denominated the res gestæ rule, which is an exception to the hearsay rule. The statements were not made contemporaneously with the accident nor were they spontaneous utterances made at the time of the occurrence of the accident. The case of Davis v. Bennett's Adm'r, decided October 3, 1939, and reported in 279 Ky. 799, 132 S. W. (2d) 334, 338, is directly in point. In that case, the plaintiff sought to show that the automobile causing the injury belonged to the defendant, was being driven by Henry Thomas, defendant's agent and servant, and that Thomas, at the time, was acting in the course of his employment. The principal testimony as to the ownership of the car, the agency of Thomas, and the nature and scope of his agency was that of Joe Moton who testified that he was traveling as a passenger in a taxicab driven by Thomas at the time of the accident was alleged to have occurred, and that during the trip Thomas told him that the car he was driving belonged to Davis, the defendant. After a discussion of the res gestæ rule it was said:

''Appellee, we conceive, has altogether failed to bring Moton's admitted hearsay testimony within the scope and principle of the res gestæ rule, in that witness failed to state that Thomas' statement as to Davis being the owner of the car he was driving was made spontaneously at about the time the accident occurred. It is therefore our conclusion that the court prejudicially erred in permitting this extra judicial statement, made by the alleged agent, Thomas, to Moton, to be admitted as a part of the res gestæ. The admission of this hearsay evidence was further objectionable and improper for the reason that its purpose was not only to show that Davis was the owner of the car, but also to raise the presumption that the car being in his possession, he was the agent of the defendant, Davis, in driving

it and that he was in the course of his employment, as agent, when it is alleged he wrongfully crowded the deceased's car off his side of the highway, causing the accident in which he was killed.''

The term ''res gestæ'' in this exception to the hearsay rule, is defined thus in 20 Am. Jur. Evidence, Section 662:

''Res gestæ may broadly be defined as matter incidental to the main fact and explanatory thereof and may include acts and words which are so closely connected therewith as to constitute a part of the transaction; and such acts and words must be spontaneous and so related to the occurrence in question as reasonably to appear to be evoked and prompted thereby. Stated differently, the term 'res gestæ' comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content. Statements which conform to these requirements and which in some way elucidate, qualify, or characterize the act in question are admissible in evidence as a distinct and separate exception to the hearsay rule. * * * The term 'res gestæ' implies that the events themselves speak through the instinctive words and acts of the participants and that the circumstances, facts and declarations which grow out of the main fact are contemporaneous with it and serve to illustrate its character. Expressed differently whether a declaration is a part of the res gestæ depends upon whether the declaration was the facts talking through the party or the party talking about the facts.''

In Section 669, under the title ''Evidence,'' in the same volume, it is said:

''It is essential that the declarations accompany the act they describe or relate to and be made simultaneously with its occurrence or so near thereto as to form a part thereof. Accordingly, the general rule is well settled that a declaration sought to be proved under the res gestæ exception to the hearsay

rule must have been contemporaneous with the event established as the principal act; it must spring from this act simultaneously with its occurrence, without any intervening interval or opportunity for deliberation in forming the statement."

See Sparks Bus Line, Incorporated, v. Spears, 276 Ky. 600, 124 S. W. (2d) 1031.

The statements attributed to Ruble Smith by various witnesses were not so closely connected with the main fact as to constitute a part of the transaction. They did not grow out of the accident and were not contemporaneous with it. In no sense were they part of the res gestæ. They were not prompted by the occurrence in question, which was the accident, but were mere hearsay. We conclude that the court erred in admitting testimony concerning conversations of Ruble Smith with third persons and statements made by him in the absence of the defendant and not at the time of the accident which tended to show that he was acting within the scope of his employment.

The proof for the defendant showed that Ruble Smith was arrested for being drunk in a public place on Saturday evening before the accident, in which he was killed, and spent the night in jail; that he paid a fine on the following morning, and at about 11 o'clock on Sunday morning appeared at defendant's used car lot and told the attendant on duty that he was going about a block down Main Street to show a car to a prospect, and asked the attendant to put one gallon of gasoline in the car which the attendant did. Ed Crowell testified that he got in the car with Smith at the Galloway Motor Company station on Sunday morning and drove with him until 3:30 or 4 o'clock in the afternoon. Smith did not call on a prospect during this time, but spent the time driving in and around Bowling Green. He bought two gallons of gasoline at a filling station about eight blocks from the Galloway Motor Company station, and he and Crowell made one or more trips to a roadhouse in the country where they drank whisky and beer. They stopped at Crowell's home between 3:30 and 4 o'clock in the afternoon, and Crowell refused to ride further with Smith because he thought Smith was too drunk to drive. As Smith left Crowell's home he fell down the

steps. The accident happened about 5 o'clock, p. m., and it was then dark and snowing. The proof introduced by the defendant is undisputed and overcomes the mere presumption created by plaintiff's proof that Smith, at the time of the accident, was acting within the scope of his employment. It follows that the trial court erred in overruling the defendant's motion for a directed verdict in its favor at the conclusion of all the evidence. See Dunning v. Kentucky Utilities Company, 270 Ky. 44, 109 S. W. (2d) 6.

It is also insisted that the lower court erred in refusing to give the defendant the benefit of having the concluding argument and since there may be another trial, and additional evidence sufficient to take the case to the jury may be introduced, we will dispose of that question. It is argued that the burden of proof was upon the plaintiff, but that the court by its ruling that the plaintiff had made out a prima facie case, shifted the burden of proof to the defendant, and that the person having the burden of proof is entitled to the closing argument. The term "burden of proof" is used commonly as applying to two kinds of situations. First, the risk of nonpersuasion; second, the duty of going forward with evidence. The party having the risk of nonpersuasion is naturally the one upon whom first falls the duty of going forward with evidence because, since he wishes to have the jury act for him and since without any legal evidence at all they could properly take on action, there is no need for the opponent to produce evidence, and this duty thus falls first upon the party having the risk of nonpersuasion. As to the shifting of the burden of proof, the first burden mentioned above, the risk of nonpersuasion never shifts. The burden of proof is on the party who would be defeated if no evidence were offered on either side and is fixed at the beginning of the trial by the nature of the allegations of the pleadings, and does not change during the course of the trial. Kentucky Wagon Manufacturing Company v. City of Louisville, 97 Ky. 548, 31 S. W. 130, 17 Ky. Law Rep. 366. The second kind of burden, however, the duty of going forward with evidence, does have this characteristic of shifting. The plaintiff having introduced evidence supporting his cause and making out a prima facie case, the duty of going forward with the evidence shifts to

the defendant. In the present case, the risk of nonpersuasion fell upon the plaintiff as he was the party who would lose if no evidence were introduced at all, and, as stated above, the duty of going forward with evidence fell upon him at first. Having introduced evidence sufficient to make out a prima facie case, the duty of going forward with evidence shifted to the defendant. The risk of nonpersuasion having rested upon plaintiff at the conclusion of the pleading, the right to the closing argument became fixed in him and never changed during the subsequent proceedings. The fact that later the duty of going forward with evidence fell upon defendant did not change the rights of the parties as to the concluding argument. Moss v. Mittel, 253 Ky. 504, 69 S. W. (2d) 1046; Greenleaf on Evidence, Volume 1, Section 14; Jones' Commentaries on Evidence, second edition, Volume 2, p. 859, Section 483.

The judgment in each case is reversed, with directions to grant the defendants a new trial, and for further proceedings consistent herewith.

The Whole Court sitting.