**W. E. ARMOUR and Lloyd Armour, d/b/a Armour Motor Company, Appellants,**

v.

**Seldon HASKINS, Appellee.**

Court of Appeals of Kentucky.

Jan. 28, 1955.

Rehearing Denied March 11, 1955.

J. Douglas Graham, Campton, C. A. Noble, Jr., Hazard, for appellants.

W. M. Melton, and S. M. Ward, Hazard, for appellee.

MILLIKEN, Justice.

This case involves an application of the principle recently announced in Gaidry Motors v. Brannon, Ky.1953, 268 S.W.2d 627, requiring dealers in used automobiles to exercise reasonable care in inspecting them before sale for the purpose of discovering defects which a buyer usually could not discover and which would render the automobile peculiarly dangerous to use. The duty was imposed upon the familiar theory that one who reasonably can foresee that his action or failure to act may result in an injury to others should take reasonable precautions to avoid causing the injury.

In the present case, the appellants, W. E. Armour and Lloyd Armour, partners, doing a new and used car business at Clay City in Powell County, deny that they are the sellers of the used 1950 Model Chevrolet pick-up truck whose left rear brake locked on its maiden trip after its purchase by the appellee, Seldon Haskins, causing the vehicle to shunt into a rock cliff at the side of the road and resulting in severe injury to its new owner and driver. The truck was sold to the appellee by L. P. Napier in September, 1953, upon an open bill of sale.

L. P. Napier and his brother, Burnice Napier, operated a used car lot on the outskirts of Hazard in Perry County, and they, in turn, had obtained the truck in June, 1953, at a used car lot in Stanton which was operated by one of the appellants, Lloyd Armour, and Bascom Patrick, as partners, and they in turn had bought the truck in May, 1953, from the Pack Chevrolet Motors in West Liberty on an open bill of sale, dated April 22, 1953, showing John W. Bach as the vendor. No consideration passed from Napier at the time he obtained the car from Patrick in June, but payment was made to the Armour Motor Company when the check came from the General Motors Acceptance Corporation (hereafter referred to as GMAC) after the sale to Haskins.

Neither Napier nor the partnership of Lloyd Armour and Bascom Patrick had credit facilities to finance the sale of their used cars, so they used the facilities of the appellants, W. E. and Lloyd Armour, doing business as Armour Motor Company, in securing credit from GMAC, the same as would have been done in case the Armour Motor Company was arranging credit for the sale of one of its new cars or a used car from the lot adjacent to its garage and showroom at Clay City. In order to use the facilities of GMAC it was necessary for the appellants to execute Conditional Sales Contracts from the Armour Motor Company to the conditional vendees so that they could be filed with GMAC, and that was done in this instance. As a con-

sequence, the youthful appellee who purchased the truck has written corroboration of his contention that he bought it from Napier as agent of the appellants. On the other hand, the appellants stoutly deny that they had anything to do with the sale and deny that Napier was their agent, insisting that he was an independent used car dealer.

The appellee-purchaser testified that Napier stated that he sold used cars for the appellants, and other witnesses testified to this effect. This evidence was incompetent and should not have been admitted for, as stated by Judge Rees in Galloway Motor Co. v. Huffman's Adm'r, 281 Ky. 841, 137 S.W.2d 379, 382:

"It is a rule, universally recognized, that the *declarations* of an agent are inadmissible to prove the fact of agency or that he was acting within the scope of his authority in a particular transaction. * * * 'Agency may be proved by the *testimony* of the agent or by circumstantial evidence, as any other fact, but it may not be proven by the *declarations* of the agent, which is nothing more than hearsay against the principal.'"

It is perhaps needless to say that Napier denied making such declarations when he took the stand to testify.

The Conditional Sales Contract introduced in evidence bears the imprint "Duplicate Original." It was read as part of the evidence of Eugene Rush, Jr., manager of the GMAC office in Hazard, and was dated September 21, 1953, five days after the date of the sale and accident. Both W. E. Armour and Lloyd Armour admit that they signed it, but assert that they did so in order to help Napier and the appellee-purchaser complete the sale. W. E. Armour testified that it was necessary to be a General Motors dealer in order to finance sales through GMAC. Each of the Armours denied that Napier was their agent and that they had any interest in the truck when it was sold by him to appellee. Their effort to help Napier finance the sale may have been motivated by the fact that Napier oc-

casionally bought used cars from the Lloyd Armour-Patrick partnership in Stanton where he had obtained the pick-up truck involved in this case. Bascom Patrick testified that appellant W. E. Armour never had any interest in the truck, and he further testified that used cars were nearly always transferred on open bills of sale (bills with vendees' names not filled in), which is a violation of KRS 186.190. L. P. Napier, Bascom Patrick and Burnice Napier differed in their accounts of when and how L. P. Napier paid Patrick for the truck, but it seems pretty clear to us, as it doubtless did to the jury, that no consideration passed at the time L. P. Napier procured it from Patrick, and that the latter received no money for it until the sale was consummated some three months later, if then.

■ In view of this array of evidence on the issue of whether L. P. Napier was the agent of the Armour Motor Company, the incompetency of the quoted declarations of L. P. Napier that he was their agent appears to us not to be prejudicial. There was ample competent evidence from which the jury was justified in concluding that L. P. Napier was the agent of the appellants. We cannot say that the verdict would have been different had the incompetent testimony as to his declarations been excluded. "The determination of the existence of prejudice from the erroneous admission of evidence depends in the final analysis upon the facts of the individual case * * *." 3 Am.Jur., page 580.

■ Furthermore, the Conditional Sales Contract admittedly was signed by the appellants, is reasonably clear in its meaning, was not entered into by mistake, and was delivered to the purchaser without any reservation as to its purpose. In such circumstances, it appears to us that the parties accepted the writing at the time of its execution as the distillation or integration of all that had previously occurred in the way of negotiation and agreement, and, as a consequence, the appellants were not entitled to vary its effect by parol evidence to fit their present purpose. Wigmore, Evidence, Sections 228 and 237; 3 Corbin on Contracts, Section 573; Restatement of the Law of Contracts, Sections 228, 237.

On the issue of negligence in failing to have the brakes in safe working order at the time of sale or of notifying the purchaser of their defective condition, the appellants offered evidence that the truck had been used almost daily during the summer, that it had been serviced three days before it was sold to the appellee, and that the latter tried it out on two separate days before buying it. L. P. Napier admitted he told the purchaser, Haskins, that it was in good mechanical condition, but denied that he guaranteed it in any way. Such a representation undoubtedly was within the scope of his authority as agent. Yet, there seems to be no question but that the left rear brake locked while Haskins was taking his first trip as owner going down a steep, rough mountain road a couple of miles from the used car lot managed by the Napiers. A qualified automobile mechanic who examined the truck the morning after the accident testified that a defective grease seal leaked grease from the rear-end housing into the brake drums and onto the lining which caused the brakes to grab. He concluded that the grease had been accumulating in the brake drum for "quite some time" because it was black and "looked old" and, of course, leaked into the brake lining when the wheel warmed up with use.

■■ At this point the question arises whether this is a proper case for the application of the doctrine of Gaidry Motors v. Brannon, Ky., 268 S.W.2d 627. Because of many factors pointed out so clearly in the dissenting opinion in that case, the decision in the Gaidry Motors case must be narrowly confined. Used car dealers must not be made insurers; they must not be made responsible for the continuing safety of the automobiles they sell, nor are we ready yet to impose on them by judicial fiat the degree of responsibility borne by purveyors of articles inherently or intrinsically dangerous to life. Anyone who buys a used car knows he is not getting a new one, but, like the horse in "David Harum", is it too much to expect it to stop without

hitching so that even a woman could drive it? In the Gaidry Motors case and in this one, we have similar elements: (1) defective brakes, (2) brakes whose defectiveness could have been easily ascertained or recognized by a qualified automobile mechanic, and (3) which defect caused an accident resulting in personal injury immediately after the sale (4) to a buyer who relied largely on the judgment of the seller (5) before that buyer had had full opportunity to become aware of the defect and (6) before a change in the condition of the vehicle could be either caused or expected from usage. In such circumstances we held it proper to submit the issue of liability to a jury on the ground that a dealer who presumably knows the condition of his used cars as an element in determining their values, necessarily either knew or should have known the condition of a specific vehicle and whether it was in a reasonably safe condition for a buyer to operate. In the Gaidry Motors case we imposed no continuing obligation on the dealer, set up no specific standard of inspection, but merely left it to a jury to impose liability if they found that the dealer should have foreseen that the release of a used car in the condition of that one would probably result promptly in an injury to others because of its defective condition. We find a striking parallel of the Gaidry Motors case to the case at bar, and conclude that the trial judge was justified in submitting the case to the jury on the issue of negligence.

█ The appellants complain that the instructions were erroneous. The court instructed the jury in part that "it was the duty of the defendants (appellants) at the time they sold and delivered the truck mentioned in the evidence to use and exercise ordinary care and reasonable care to see that the truck was in a good mechanical condition to the extent that it would not be dangerous for the plaintiff (appellee) or any other person to drive the truck upon the highway * * *." This instruction is consistent with the doctrine in Gaidry Motors v. Brannon, Ky., 268 S.W.2d 627. The remaining instructions properly submitted the issue of Napier's agency, and the elements of damage as well as the defense of contributory negligence.

█ Objection was made to the exclusion of certain evidence. For example, an objection was sustained to the introduction of testimony to the effect that the appellee had operated the truck before he bought it, but the record shows that the witness answered to the jury before the objection was sustained. In any event, the exclusion was not prejudicial for there was other evidence to the same effect, and Haskins admitted driving the car a half mile immediately before the sale in the company of Napier. It was not error for the court to exclude evidence of the good condition of the truck in August several weeks before the sale.

█ The appellants contend that the verdict and judgment of $10,000 for personal injuries is excessive. The medical testimony showed that the appellee received a fractured right kneecap, which was operated upon the morning after the accident. He was required to wear a plaster cast for a period of six weeks and was still using crutches at the time of the trial, six months after the accident. The injured man was 23 years of age, had been employed as a clerk before his injury earning $145 a month, and had a life expectancy of 46.75 years. He suffered a shrinking of the muscles in the injured leg above the knee, and it was estimated that he suffered a possible 10% permanent injury. On the basis of his life expectancy and present salary, the amount awarded him for a 10% permanent disability would amount to $8,134.50, which would leave less than $2,000 for his pain and suffering. In view of this analysis, we are forced to conclude that the verdict bears a reasonable relation to the injury sustained, was therefore an amount within the sound discretion of the jury to assess, and one which we would not be justified in setting aside.

The judgment is affirmed.

SIMS, Justice (dissenting).

Since I joined the dissent in Gaidry Motor v. Brannon, Ky., 268 S.W.2d 627, 629,

naturally I cannot agree with the majority opinion here.

There is still another reason I have for dissenting in this case. It is, this opinion goes much further than the Gaidry opinion in that here the seller had used the truck for some two months and discovered no mechanical defects in it. Patently, the seller here could not "foresee that his actions or failure to act may result in an injury to others", as was said in the Gaidry opinion. It strikes me that this opinion in effect makes the seller a guarantor of the truck sold Haskins, although the latter had tried out the truck a couple of times before purchasing it and had satisfied himself with its mechanical condition.

I am authorized to say that Judge CAMMACK joins me in the second paragraph of this dissent.