**KINDRED NURSING CENTERS LIMITED PARTNERSHIP, d/b/a Bashford East Health Care, Kindred Nursing Centers East, LLC., Kindred Hospitals Limited Partnership, Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc. and Theodore Burfiet, in his capacity as administrator of Bashford East Health Care, Appellants,**

v.

**Teresa BROWN, as Guardian of Maurice Childress, an Incapacitated Person, Appellee.**

No. 2010–CA–000286–MR.

Court of Appeals of Kentucky.

April 1, 2011.

Discretionary Review Denied by Supreme Court Aug. 17, 2011.

Donald L. Miller, II, Louisville, KY, for appellants.

Richard E. Circeo, Lisa E. Circeo, Deborah Truby Riordan, Lexington, KY, for appellee.

Before CAPERTON, COMBS, and KELLER, Judges.

*OPINION*

CAPERTON, Judge:

The Appellants appeal from the Jefferson Circuit Court's order denying their motion to dismiss or in the alternative stay the lawsuit pending an alternative dispute resolution; i.e., arbitration proceeding. After a thorough review of the parties' arguments, the record, and the applicable law, we affirm the trial court's denial of Appellants' motion.

Maurice Childress is an incapacitated adult suffering from a variety of serious medical conditions which require full-time skilled nursing care. Childress was a resident of Bashford East Health Care[1] ("Bashford"), a nursing home, from February 16, 2008, to September 11, 2008. Teresa Brown, Childress's mother, admitted Childress to Bashford due to Childress being of unsound mind. At the time of admission, Brown was not Childress's legal guardian. During the admission process, Brown signed an Alternative Dispute Resolution ("ADR") Agreement in her own name. This agreement listed Childress as the resident of the facility and had a line for the signature of the resident or legal representative with instructions for the representative to list in what capacity they were signing; i.e., spouse, guardian, durable power of attorney, etc. As noted, Brown signed her name and not Childress's and did not list what, if any, legal capacity she had to act as the representative of Childress.

While a resident at Bashford, Childress allegedly sustained numerous injuries which prompted Brown, in her new capacity as Guardian,[2] to file a Complaint in the Jefferson Circuit Court alleging negligence, medical negligence, corporate negligence, and violations of Long Term Resident's Rights. The Appellants filed their motion to dismiss or in the alternative to stay the lawsuit pending alternative dispute resolution proceedings; i.e., a motion

---

1. Bashford is owned, operated, managed, and administered by the Appellants.

2. Brown was appointed as the legal guardian of Childress on March 3, 2009.

to compel arbitration on August 28, 2009. Following a hearing, the trial court denied the Appellants' motion on the basis that the ADR agreement was signed by Brown prior to her appointment as Childress's guardian; that she lacked the authority to execute the agreement on Childress's behalf; and that she asserted his rights rather than her own in denying the validity of the ADR agreement. Thus, the court determined that Childress cannot be compelled to waive his right to a jury trial and thereby arbitrate his claims against the Appellants. It is from this order that the Appellants appeal.[3] Additional facts will be discussed *infra.*

On appeal, Appellants present five arguments, namely, (1) the law favors enforcement of ADR agreements; (2) Brown is estopped from denying her authority to execute the ADR agreement under Kentucky law; (3) Childress is estopped from avoiding the ADR agreement under the Federal Arbitration Act ("FAA"); (4) Childress is bound by the ADR agreement executed by his mother under the principle of apparent authority; (5) Brown ratified the execution of the ADR agreement by her post-guardianship conduct. The Appellee disagrees and presents four arguments, namely, (1) Childress is not bound by the ADR agreement because it was not signed by anyone with authority to bind him; (2) Appellants' apparent authority argument is not preserved for appeal; (3) there is no evidence that Childress or anyone on his behalf ratified the ADR; (4) in the event this Court reverses the trial court's decision, Brown requests that the parties be directed to conduct discovery on remand pertinent to the arbitration issue.[4]

With these arguments in mind we now turn to our applicable standard of appellate review.

■ At the outset, we note that a trial court's findings of fact will "not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. A finding of fact is clearly erroneous when it is not supported by substantial evidence. *Eagle Cliff Resort, LLC v. KHBBJB, LLC,* 295 S.W.3d 850, 853 (Ky.App.2009). Substantial evidence has been defined as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. *Secretary, Labor Cabinet v. Boston Gear, Inc.,* 25 S.W.3d 130, 134 (Ky.2000). Legal issues will be reviewed de novo. *Mt. Holly Nursing Center v. Crowdus,* 281 S.W.3d 809, 813 (Ky.App. 2008). With these standards in mind we now address the parties' arguments.

■ The Appellants first argue that the law favors enforcement of ADR agreements. While it is true that Kentucky law generally favors the enforcement of arbitration agreements, the existence of a valid arbitration agreement is a threshold matter which must first be resolved by the court. *Mt. Holly Nursing Center* at 813 (internal citations omitted), and *General Steel Corp. v. Collins,* 196 S.W.3d 18, 20 (Ky.App.2006) (internal citations omitted). Moreover, the burden of establishing the existence of an arbitration agreement that conforms to statutory requirements rests with the party seeking to enforce it. *Marciniak v. Amid, M.D.,* 162 Mich.App. 71,

---

**3.** *See Kindred Hospitals Ltd. Partnership v. Lutrell,* 190 S.W.3d 916, 920 (Ky.2006) (KRS 417.220 provides for interlocutory appeal of a trial court's order denying a KRS 417.060 motion to compel arbitration).

**4.** In contrast to an argument, this is more of a motion made by the Appellee for this Court to direct the trial court to take specific actions should we reverse. We have affirmed and, thus, view this "argument" as moot.

75, 412 N.W.2d 248, 250 (1987). In the case *sub judice* we do not agree with Appellants that the trial court erred in denying Appellants' motion even though the law generally favors the enforcement of ADR agreements for the reasons set forth *infra.*

We now turn to the Appellants' second argument, namely, that Brown is estopped from denying her authority to execute the ADR agreement under Kentucky law. Appellee counter-argues that as Childress's *guardian,* Brown is not estopped from denying the validity of the purported ADR agreement and Childress cannot be estopped by the actions of Brown when she was not his guardian. As discussed *supra,* the trial court found that the ADR agreement was signed by Brown prior to her appointment as Childress's guardian, and that as a result, she lacked the authority to execute the agreement on Childress's behalf. Moreover, the court found that Brown asserted Childress's rights rather than her own in denying the validity of the ADR agreement; and as such, Childress cannot be compelled to waive his right to a jury trial and arbitrate his claims against the Appellants.

"[E]stoppel is a question of fact to be determined by the circumstances of each case." *Weiand v. Board of Trustees of Kentucky Retirement Systems,* 25 S.W.3d 88, 91–92 (Ky.2000) (internal citations omitted). Under the doctrine of equitable estoppel, certain conduct by a party is viewed as being so offensive that it precludes the party from later asserting a claim or defense that would otherwise be meritorious. *Akers v. Pike County Bd. of Educ.,* 171 S.W.3d 740, 743 (Ky.2005). In order to prevail on a theory of estoppel, there must be proof not only of an intent to induce action or inaction on the party to be estopped, but also of reasonable reliance by the party claiming the estoppel.

*Gailor v. Alsabi,* 990 S.W.2d 597, 604 (Ky. 1999) (internal citations omitted). Indeed in *Weiand, supra,* the Kentucky Supreme Court set out the essential elements of equitable estoppel as:

(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Weiand v. Board of Trustees of Kentucky Retirement Systems,* 25 S.W.3d 88, 91 (Ky. 2000) (internal citations omitted).

We disagree with Appellants that Brown should be estopped from denying her authority because she became the legal guardian of Childress. Inherent in Appellants' argument is that Brown is not purporting to deny the validity of the contract she signed. Rather, the *legal guardian* of Childress is purporting to do so. While Brown may be the same person in both instances, she is acting in different capacities. The capacity in which she acted determines the effect that the actions have on any one particular instance or set of circumstances. When Brown assumed the

legal guardianship of Childress, she assumed certain fiduciary duties. Regardless of Brown's prior actions, once appointed as guardian of Childress her actions that affect Childress are guided by those fiduciary duties. If we were to find otherwise, then the enforceability of the arbitration agreement would be speculative as to who might subsequently be appointed guardian. To explain, if the initial signer of the ADR had already been appointed guardian, then it would be enforced; but if other than the initial signer, later became guardian, then it would not be enforced because enforcement would require our Court to find that an individual without any fiduciary duty could subsequently bind a duly appointed guardian with fiduciary duties. This is unsound ground upon which our law cannot rest.

█ Alternatively, the Appellants argue that the ADR contained the following provision:

> [I]f signed by a legal representative, the representative certifies that the [provider] may reasonably rely upon the validity and authority of the representative's signature based upon actual, implied, or apparent authority to execute the Agreement as granted by the [resident/patient].

Appellants argue that this provision allowed them to rely on Brown's signature. We disagree and find that the Appellants could not reasonably rely upon Brown's signature alone without an explanation of her legal authority to bind Childress. Given that Childress was mentally incapacitated at the time the ADR was signed and that Brown did not purport to be the legal representative[5] of Childress, then the provision by its own language does not support the Appellants' argument because at the time of signing Brown was not the legal guardian.

█ The Appellants argue that a progress note of May 6, 2008, illustrates that Brown repeatedly asserted her authority to bind Childress. The note stated:

> Rod does have a very supportive mother who has cared for him since he was diagnosed with MS in his early twenties ... Discussed his lack of advance directives and the benefits of her becoming his guardian. His mother remained firm that she does not need guardianship, as she already makes all decisions regarding his care and he has been ill for so long there is no estate to handle.... Mother did sign DNR.

Our focus is on the rights of Childress. Brown's assertions as to what she needed to make decisions for Childress is of little legal import and it is not reasonable for Appellants to rely on the legal effect of these assertions. It is to the Appellants' peril that they accepted the ill-advised legal effect of the assertions of third parties, here Brown. We do not find this progress note to be persuasive because the progress note was taken months after the ADR agreement in question was signed, and the note imputes knowledge to the Appellants that Brown did not have legal guardianship over Childress.

█ We likewise disagree with the third argument asserted by the Appellants that Childress is estopped from avoiding the ADR agreement under the FAA.[6] We do not believe that applying the FAA would render a different result. As held in *American General Home Equity, Inc. v. Kestel,* 253 S.W.3d 543, 550 (Ky.2008):

---

5. There was no argument that there was a durable power of attorney that granted Brown authority to bind Childress, an incapacitated adult/alleged principal.

6. Federal Arbitration Act.

Whether state or federal law governs makes little practical difference, however, because the Kentucky Uniform Arbitration Act (KUAA) contained in Kentucky Revised Statutes (KRS) Chapter 417 is similar to and has been construed consistently with the FAA. Furthermore, both the FAA and KUAA state that arbitration agreements must be enforced unless valid grounds for revoking any contract are established.

*Kestel* at 550 (footnotes omitted). *See also Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky.2004) (noting "we have interpreted the KUAA consistent with the FAA ..."). Thus, under the FAA any ground to revoke or defense to a contract under the KUAA would be valid. And, as we discussed *supra*, the lack of authority of Brown signing the ADR agreement for Childress is one such ground or defense.

Therefore, on the issues surrounding estoppel, we find that the trial court's findings of fact were supported by substantial evidence, and we find no error in the trial court's legal conclusion that Brown as the guardian of Childress, or that Childress himself, was not estopped from denying the validity of the ADR agreement.

■■■■ The Appellee claims that Appellants' fourth argument, namely, that Childress is bound by the ADR agreement executed by his mother under the principle of apparent authority, is not preserved for appeal as they did not raise the issue of apparent authority before the trial court hearing. The Appellants respond that "there is absolutely no legal support for the proposition that a litigant must verbally address each and every legal argument raised in its pending motion in order to preserve the argument for appeal." For purposes of our analysis, we will assume, arguendo, that Appellants' argument was preserved. Regardless, we do not agree that the principle of apparent authority binds Childress to the ADR agreement.

■■■■ Actual and implied authority are both granted to the agent from the principal. A trial court may find actual authority if "there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." *Terbovitz v. Fiscal Court of Adair County, Ky.*, 825 F.2d 111, 116 (6th Cir.1987) (overruled on other grounds) (internal citation omitted). *See also* Restatement (Third) of Agency § 2.01 (2006) (When an agent acts with actual authority, the agent has the power to bind the principal or to "affect the principal's legal relations with third parties[.]").

■■■■ Apparent authority is created when the *principal* holds out to others that the agent possesses certain authority that may or may not have been actually granted to the agent. *See Mill Street Church of Christ v. Hogan*, 785 S.W.2d 263, 267 (Ky.App.1990) ("It is a matter of appearances on which third parties come to rely."). Moreover, "[i]t is a rule, universally recognized, that the declarations of an agent are inadmissible to prove the fact of agency or that he was acting within the scope of his authority in a particular transaction." *Galloway Motor Co. v. Huffman's Adm'r*, 281 Ky. 841, 137 S.W.2d 379, 382 (1939).

There is no allegation that Childress did anything to imbue Brown with any authority whatsoever. Further, even if Childress had taken some action consistent with the establishment of apparent or actual authority, we must remember that Childress was not of mental capacity to act on his own behalf. Accordingly, he was incapable of denying such acts of his own volition. The failure of Childress to deny the actions of another, here Brown, when Childress is incapable of making such a denial

can hardly be taken as acquiescence to or validation of those actions. Lastly, the declarations of Brown as to authority over Childress carry no weight under *Galloway*. Thus, we fail to understand how either of these theories helps the Appellants. Therefore, the trial court did not err in finding the absence of either actual or apparent authority by Brown to act on the behalf of Childress.

We now turn to the Appellants' last argument, namely, that Brown ratified the execution of the ADR agreement by her post-guardianship conduct. In support thereof, Appellants argue that Brown did not disavow the ADR agreement, and that prior to being appointed legal guardian of Childress, she had signed five additional ADR agreements when Childress was admitted to Kindred Hospital of Louisville. The Appellee disagrees and argues that there is no evidence of ratification by her on behalf of Childress. In support thereof, Appellee explains that the ADR agreement could not be revoked after 30 days of its being executed and that the other ADR agreements are not relevant to the ADR in dispute as they were for admission to the hospital.

As noted in *Capurso v. Johnson*, 248 S.W.2d 908 (Ky.1952):

It is a well-established rule of law that if one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as the agent of the latter, even though without any precedent authority whatever, if the person in whose name the act was performed subsequently ratifies or adopts what has been so done, the ratification relates back and supplies original authority to do the act. In such cases, the principal, whether a corporation or an individual, is bound to the same extent as if the act had been done in the first instance by his previous authority;

this is true whether the act is detrimental to the principal or to his advantage, whether it sounds in contract or tort, or whether the ratification is express or implied.

*Id.* at 910 (quoting 2 Am.Jur., Agency, § 209, p. 166).

In *Capurso*, the law is clear that ratification or adoption of a prior agreement entered into by a purported agent, here Brown, for an alleged principal, here Childress, requires ratification or adoption by the principal. Again, as discussed *supra*, Childress was incapable of taking any action whatsoever and, thus, cannot be found to have adopted or ratified any agreement. Insofar as Appellants argue that Brown should be estopped from denying her own actions as a purported agent of Childress, reliance on *Capurso* is misplaced because *Capurso* focuses on the acts of the principal (Childress) not of the agent (Brown) in applying the estoppel doctrine. Therefore, we agree with the Appellee that Brown's post-guardianship actions do not and cannot ratify the ADR agreement. Accordingly, the trial court did not err in denying the Appellants' motion.

Finding no error, we affirm.

ALL CONCUR.