RENDERED: MAY 1, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1080-MR

OWENSBORO KY OPCO, LLC D/B/A
CHAUTAUQUA HEALTH AND
REHABILITATION; CLEARVIEW
HEALTHCARE MANAGEMENT KY,
LLC D/B/A CLEARVIEW
HEALTHCARE MANAGEMENT;
DONNA DAVIS, IN HER CAPACITY
AS ADMINISTRATOR OF
CHAUTAUQUA HEALTH AND
REHABILITATION; NAFTALI
ZANZIPER; OWENSBORO KY
PROPCO, LLC; SIMCHA HYMAN;
AND THE PORTOPICCOLO GROUP,
LLC                                                                             APPELLANTS


                    APPEAL FROM DAVIESS CIRCUIT COURT
v.          HONORABLE JAMES A. WETHINGTON, JUDGE
                    ACTION NO. 23-CI-00007


MARANDA HALL, AS EXECUTRIX                                    APPELLEE
OF THE ESTATE OF EVA NELL
SUMNER

OPINION
REVERSING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

ACREE, JUDGE:  Appellants appeal the Daviess Circuit Court's denial of their motion to compel arbitration.  We reverse.

**BACKGROUND**

Our review centers on an optional arbitration agreement (Agreement).  There is no dispute that Sumner executed a power of attorney making Hall her attorney-in-fact.  There is no dispute Hall signed the Agreement as part of Sumner's admission to Chautauqua Health and Rehabilitation.  Only hours after being admitted, Sumner suffered a fall and was sent to the emergency room.  She died a few days later.

Hall filed suit as executrix of Sumner's estate.  Citing the Agreement, Appellants filed a motion to compel arbitration.  The trial court denied the motion and Appellants appealed.  We furnish additional facts as necessary.

**STANDARD OF REVIEW**

The denial of a motion to compel arbitration is appealable.  KRS[1] 417.220(1)(a).  We review arbitration agreements pursuant to the Kentucky

---

[1] Kentucky Revised Statutes.

Uniform Arbitration Act, KRS 417.045 *et seq.*, as well as the Federal Arbitration Act, 9 U.S.C.[2] §§ 1 *et seq.* *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). "Under both Acts, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Id.* Because the enforceability of an agreement to arbitrate is a question of law, we review the trial court's ruling *de novo*. *Kindred Nursing Centers Limited Partnership v. Cox*, 486 S.W.3d 892, 894 (Ky. App. 2015). We review the trial court's factual findings for clear error. CR[3] 52.01.

## ANALYSIS

The trial court concluded Maranda Hall did not sign the Agreement as an authorized representative empowered to bind Sumner to an arbitration agreement. Instead, the court concluded Hall only signed the Agreement as Sumner's friend. Applying our jurisprudence in this narrow area, the record does not support that conclusion.

The court's focus was not on the signature line Hall actually signed. Hall's signature appears below the first signature section of the Agreement designated for the "**Resident**:." (R. 96) (double emphasis in original). It is also below the line labeled "Resident's Signature by Resident Only" which is left blank.

---

[2] United States Code.

[3] Kentucky Rules of Civil Procedure.

Below the Resident's signature section is a second signature section entitled: "**<u>Authorized Representative</u>**:" (Double emphasis in original). Hall signed on the next line designated for the "Signature of Authorized Representative." Below that line was another which asks the Authorized Representative to "Print Authorized Representative's Name." The name "<u>Miranda Hall</u>" is typed on that line, although misspelled.

The trial court found the Agreement's last four-word line controlling. It is typed and simply says: "Relationship to Resident: <u>Friend</u>." We disagree with the trial court's conclusion that this fact alone overrides Hall's previous representations of her legal capacity. That conclusion is not bolstered by the trial court's finding that Hall "did not indicate anywhere that she was signing in her capacity as [Sumner]'s power of attorney[.]" (R. 226) (Order Denying Mot. to Compel Arbitration).

"Kentucky law does not require a party to explicitly state they are acting as an attorney-in-fact[.]" *Cambridge Place Group, LLC v. Mundy*, 617 S.W.3d 838, 841 (Ky. App. 2021). As a consequence, jurisprudence has proven to be fact specific when it comes to determining the non-resident signatory's legal capacity to sign for the resident. In *Mundy*, a case cited by the trial court, "the issue" was not the non-resident signatory's "silence" about having her husband's power of attorney, "but rather her *affirmative avowal* that she was acting in a

*separate capacity*. In her capacity as wife, Victoria [Mundy] was authorized to make limited decisions on behalf of Thomas [Mundy]; however, the pre-dispute arbitration agreement was outside that scope." *Id.* (emphasis added). In the case under review, Hall's affirmative avowal is that she was acting in a legal capacity as Sumner's "Authorized Representative." Her separate avowal, a description of her "Relationship" to Sumner, was that they were friends. These separate expressions of a legal relationship and a personal one are not mutually exclusive.

A recent opinion, *LP Louisville Quinn Drive, LLC v. Leonard-Ray*, discusses and distinguishes *Mundy* before enforcing the arbitration agreement. 704 S.W.3d 386 (Ky. App. 2025). Not unlike Hall, "Leonard-Ray signed her name in full on the line designated for 'Resident's Authorized Representative/Individual* Signature' on the last page . . . ." *Id.* at 390. The asterisk in the representative signature line in *Leonard-Ray* referenced a footnote that said: "Representative understands and agrees s/he is signing in both representative and individual capacities and that this agreement binds Representative, as well as Resident." *Id.* The Agreement Hall signed said more.

There is an entire Section 7 of the Agreement entitled "**Authorized Representative**." It gave Hall a thorough explanation of what she signed:

> If the Resident is unable to consent to or sign this Agreement because of a physical disability or mental incompetence or is a minor, this Agreement may be executed by an "Authorized Representative," who is duly

authorized to execute this Agreement on behalf of the Resident, and who shall execute this Agreement on behalf of the resident on the signature line for the Authorized Representative below and shall indicate his/her relationship to the Resident in the space titled "Relationship to Resident."

(R. 94) (Agreement § 7.A.). Use of the conjunctive "*and*" and not the disjunctive "or" makes it clear the Agreement requires the non-resident signatory to identify separate, not alternate, relationships—one legal and one personal.

But there is more. The same provision then explains the meaning and effect of Hall's signing in the capacity of representing Sumner, stating:

If this Agreement is signed by an Authorized Representative of the Resident, the Authorized Representative *hereby certifies that he/she is duly authorized by the Resident or other as an agent for all purposes including resolving legal claims by arbitration* and is specifically authorized to execute this Agreement and accept its terms . . . *By signing this Agreement, the Authorized Representative binds both the Resident and themselves individually to the Agreement*.

(R. 94) (emphasis added). *See LP Louisville East, LLC v. Patton*, 651 S.W.3d 759, 773 (Ky. 2020) (party "signed the Arbitration Agreement in his individual capacity in addition to signing as his father's authorized representative"); *see also Leonard-Ray*, 704 S.W.3d at 391 ("Leonard-Ray represented herself as Smith's authorized representative and as an individual").

Hall argues, however, that *Kindred Nursing Centers Ltd. Partnership v. Brown* said we could not reasonably base a finding that she signed in a

-6-

representative capacity upon her "signature alone *without an explanation of her legal authority* to bind" the Resident.  411 S.W.3d 242, 248 (Ky. App. 2011) (emphasis added).  Despite her contention otherwise, Hall did affirmatively indicate the source of her legal authority.

Section 7.B. of the Agreement begins:

As "Authorized Representative," you represent to the Facility that you have full legal authority as an agent of the Resident to sign this Agreement with the intention and understanding that the Facility is relying on such representation.  You are further certifying that there are no limitations on said authority that would prevent you from signing this document as "Authorized Representative." Additionally, you represent the following to the Facility . . . .

(R. 94) (Agreement § 7.B.).  Following was a list of options.  Hall initialed a space representing that Sumner "signed a legal document *such as a power of attorney* or living will allowing me to make all decisions for him or her, *including resolving claims by arbitration*, and I agree to provide a copy of such documents to the Facility."  (R. 95) (emphasis added).  The trial court's finding that Hall failed to indicate in the Agreement that she had written authority to represent Sumner as attorney-in-fact is refuted by the record, but it also disregards the oft-repeated rule that no explicit statement of a written power of attorney is required.

Given the foregoing, and in consideration of Kentucky's "legislative policy favoring arbitration agreements," *Ping*, 376 S.W.3d at 588, we conclude the

Agreement must be enforced, and that includes the provision that the arbitrator has "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, formation, or scope" of the Agreement.  (R. 92).

The existence of this provision resolves in Appellants' favor their argument that foundational or "gateway" questions such as the question of arbitrability must be decided by the arbitrator.  Appellants direct us to the opinion of the Supreme Court of the United States, which says:

> Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms. . . .  Applying the Act, we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . .
>
> . . . .
>
> We must interpret the Act as written, and the Act in turn requires that we interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67–68, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019) (internal quotation marks and citations omitted).  The trial court based its ruling on this issue by quoting a sentence from

-8-

*Henry Schein* that says, "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (R. 229) (quoting *Henry Schein*, 586 U.S. at 69, 139 S. Ct. at 530). The court would have made the opposite and correct ruling had it read one sentence further in the opinion: "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69, 139 S. Ct. at 530.

## CONCLUSION

Based on the foregoing, the Daviess Circuit Court's August 2, 2024 Order Denying Defendant's Motion to Compel Arbitration is reversed, and this matter is remanded with instruction to the trial court to enter an order compelling the parties to arbitration.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

A. Pete Pullen
Shem D. Beard
Louisville, Kentucky

BRIEF FOR APPELLEE:

Hannah R. Jamison
Lexington, Kentucky